## DEPARTMENT OF LABOR AND INDUSTRY, Petitioner

v.

## William HELTZEL, Respondent.

Commonwealth Court of Pennsylvania.

Argued March 12, 2014.

Decided May 5, 2014.

Thomas P. Howell, Assistant Counsel, Harrisburg, for petitioner.

Frederick N. Frank, Pittsburgh, for respondent.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge SIMPSON.

This Right–to–Know Law (RTKL)[1] appeal involves the impact of a federal law on the public status of records. William Heltzel, a Senior Investigative Reporter for *PublicSource* (Requester), sought records relating to hazardous chemicals from the Department of Labor and Industry (L & I). L & I asserted the records were protected by exceptions in Section 708(b) of the RTKL, 65 P.S. § 67.708(b), related to safety and physical security.

The Office of Open Records (OOR) issued a final determination ordering disclosure of certain records. Specifically, it deemed the information "public" under the federal Emergency Planning and Community Right–to–Know Act (EPCRA), 42 U.S.C. §§ 11001–11050, as a matter of law. Because it decided the federal statute established the public nature of the informa-

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

tion, OOR did not apply the RTKL exceptions in Section 708(b).

L & I appeals, asserting the request did not meet the criteria established in EPCRA as preconditions for access. L & I argues OOR lacked jurisdiction to apply EPCRA, and it erred in failing to apply the RTKL exceptions to protect the records. Upon review, we vacate OOR's determination and remand for disposition in accordance with this opinion.

## I. Background

Pursuant to the RTKL, Requester sought Pennsylvania's Tier II hazardous chemicals inventory database (Tier II Database) from L & I (Request). Requester argued disclosure was mandatory because EPCRA classified Tier II information as public records.

EPCRA contains reporting requirements for facilities that store hazardous chemicals. It requires any owner or operator of a facility to submit a hazardous chemical inventory form (Inventory Form) to: (1) the appropriate local emergency planning committee; (2) the state emergency response commission; and, (3) the local fire department with jurisdiction over the facility. 42 U.S.C. § 11001. The Hazardous Material Emergency Planning and Response Act (Hazmat Act)[2] designates the Pennsylvania Emergency Management Council (Council) as the state emergency response commission.

Pursuant to a delegation by the Pennsylvania Emergency Management Agency (PEMA), the primary agent of the Council, L & I collects the Inventory Forms and responds to related requests for information. Section 201 of the Hazmat Act, 35 P.S. § 6022.201(g)(7). L & I receives information requests under the state Hazmat Act and the state Worker and Community Right–to–Know Act, Act of October 5, 1984, P.L. 734, *as amended,* 35 P.S. §§ 7301–7320. In concert, these acts inform the public about hazardous materials in their local communities.

L & I denied the Request based on the public safety exception in Section 708(b)(2) of the RTKL, 65 P.S. § 67.708(b)(2), and the physical security exception in Section 708(b)(3) of the RTKL, 65 P.S. § 67.708(b)(3). L & I also advised that the request did not comport with a request for information under EPCRA because it did not specify a storage facility, as EPCRA requires in Section 312, 42 U.S.C. § 11022.

Requester appealed to OOR, arguing EPCRA identified the information contained in the Tier II Database as public record.

On appeal, L & I submitted two affidavits to OOR in support of the exceptions. Carol Freeman, of the Bureau of Occupational and Industrial Safety, (Freeman) is responsible for collection and retention of the Inventory Forms. Captain Garret Rain is Director of the Domestic Security Division within the Pennsylvania State Police, Bureau of Criminal Investigation (Rain). The Domestic Security Division primarily focuses on preventing, planning, responding to and recovery from natural disasters, and acts of terrorism. L & I also submitted the instructions for the Tier II Inventory Forms.

Freeman attested Pennsylvania collects the chemical inventory information under EPCRA in the Tier II Database. All chemical storage facilities are required to submit information regarding their loca-

---

**2.** Act of December 7, 1990, P.L. 639, *as amended,* 35 P.S. §§ 6022.101–6022.307. Part of the act's purpose is "to establish an emergency planning district and a local emergency planning committee in each county . . . to act in accordance with" EPCRA. 35 P.S. § 6022.102(b)(2).

tion and the chemicals they store on Tier II Inventory Forms. The Tier II Database "is a compendium of all Tier II reports [Inventory Forms] from each reporting entity in the Commonwealth. In total, providing the access sought by [Requester] would reveal the ... hazardous materials information for over 11,000 actively reporting facilities." *See* Freeman Affidavit, Reproduced Record (R.R.) at 13a.

More specifically, the Tier II Inventory Form identifies the precise location of the storage facility, the amount of chemicals and hazard potential, the storage mechanisms and conditions, the chemical status and particulars about security and contact information. On the Tier II Inventory Form, there is a section where the owner/operator of the facility may mark the information for a specific chemical "confidential."[3] When location information is marked confidential, it is maintained separate from information that is available to the public. For storage facilities that are unmanned and in remote locations, Pennsylvania law requires that reporting entities provide detailed site plans, access points and specific locations of the chemicals reported by latitude and longitude.

Rain attested he "presumes" the Tier II Database contains specific information related to the location and type of facility, types of chemicals stored or produced at the facility and names of contacts. *See*

Rain Affidavit, R.R. at 11a. With these "presumptions in mind," he believed the release of the Tier II Database would allow criminal actors to gather intelligence on prospective sites and provide a "ready ability to identify, locate, select, and target locations for attack or tampering and expedite their planning cycle." *Id.* He also stated disclosure endangers the physical plants and infrastructure because criminal actors may conduct initial stage surveillance of the sites for terrorist attacks. He speculated that the release of the facility contact information may also enable targeting of facility owners, managers and their families for kidnapping or terrorism.

Requester claims that PEMA acknowledges Tier II information is public record. Further, non-disclosure of the information poses a greater risk because the public may unwittingly become injured. Significantly, Requester cited only EPCRA[4] as conferring public status upon the records, arguing the federal statute supersedes the RTKL and any exceptions thereunder.

Based on the written submissions, OOR issued a final determination directing disclosure of the Tier II Database, with the exception of information facility owners marked confidential. OOR reasoned that the Section 708(b) exceptions did not protect the records because EPCRA renders the information public. Specifically, OOR held that Section 324 of EPCRA, 42 U.S.C.

---

3. In determining that information is confidential, the owner/operator must show each of the "trade secret factors" under Section 322 of EPCRA, 42 U.S.C. § 11042(b). These factors include that "the information is not required to be disclosed, or otherwise made available, to the public under any other Federal or State law[;] [d]isclosure is likely to cause substantial harm to [the owner/operator's] competitive position[;] [and,] the chemical identity is not readily discoverable through reverse engineering." *Id.* In addition, the person must show he has not disclosed the information to any person other

than members of the local emergency planning committee or an officer or employee of the government, unless those persons are subject to a confidentiality agreement. *Id.*

4. Requester did not raise the Hazmat Act to OOR as a basis for public record status as is required by Section 1101(a) of the RTKL, 65 P.S. § 67.1101(a) ("appeal shall state the grounds upon which the requester asserts that the record is a public record"). Thus, that ground is waived. *See Fort Cherry Sch. Dist. v. Coppola,* 37 A.3d 1259 (Pa.Cmwlth.2012).

§ 11044(a), requires Tier II information to be made available to the general public.

L & I filed a petition for review,[5] challenging OOR's authority to construe a federal statute. L & I also argued OOR erred in neglecting to analyze whether the records were protected, at least in part, under Section 708(b) of the RTKL prior to ordering their disclosure. Requester responded that OOR correctly construed EPCRA to confer public nature on the records. OOR filed a brief as a friend of the court pertaining to its authority.

## II. Discussion

■ As to factual disputes, this Court may exercise functions of a fact-finder, and has the discretion to rely upon the record created below or to create its own. *Bowling v. Office of Open Records,* —— Pa. ——, 75 A.3d 453 (2013). As to a question of law under the RTKL, our scope of review is plenary. *Dep't of Corr. v. Office of Open Records,* 18 A.3d 429 (Pa.Cmwlth. 2011).

There are two issues before this Court, and both involve pure questions of law that do not implicate our potential role as the fact-finder. First, does OOR possess the authority to grant access to records predicated on its construction of a federal statute as to the public nature of the record requested? Second, did OOR correctly construe EPCRA as establishing the public nature of the records requested, superseding the exceptions contained in the RTKL? We address each question in turn.

### A. OOR Jurisdiction and Authority

■ L & I contends OOR lacks authority to determine the public nature of records under federal law. L & I asserts the interpretation of any statute other than

the RTKL is beyond OOR's purview; therefore, OOR's determination that the records are subject to disclosure based on its construction of EPCRA is unauthorized.

■ This Court rejects L & I's position. The RTKL contemplates OOR's interpretation of statutes other than the RTKL when evaluating the public nature of records. Otherwise, it would not define "public record" in a way that implicates other laws. *See* Section 102 of the RTKL, 65 P.S. § 67.102 (defining a public record, in part, as a record not exempt from disclosure "under any other Federal or State law . . .").

Moreover, Section 305 of the RTKL provides that records in possession of a Commonwealth agency like L & I are presumed to be "public" unless they are: (1) exempted by Section 708 of the RTKL; (2) protected by a privilege; or (3) exempted *"under any other Federal* or State *law* or regulation or judicial order or decree." 65 P.S. § 67.305 (emphasis added). Thus, analyzing whether a record is public entails the application of other laws, including federal statutes like EPCRA. By necessity, OOR construes federal statutes. *See Northside Urban Pathways Charter Sch. v. State Charter Sch. Appeal Bd.,* 56 A.3d 80 (Pa.Cmwlth.2012) (implied powers flow from statutory authority).

OOR is the body created to adjudicate disputes concerning denials of agency records requested under the RTKL. Section 1310 of the RTKL, 65 P.S. § 67.1310; *see also* Section 503(a) of the RTKL, 65 P.S. § 67.503(a) (OOR designates appeals officers for Commonwealth and local agencies). The RTKL thus vests OOR with jurisdiction over challenges to the public

5. In a RTKL appeal involving a Commonwealth agency, this Court may exercise independent, *de novo* review. *Bowling v. Office of* *Open Records,* —— Pa. ——, 75 A.3d 453 (2013).

nature of records in possession of a Commonwealth agency. *Bagwell v. Dep't of Educ.*, 76 A.3d 81 (Pa.Cmwlth.2013) (OOR has proper jurisdiction over appeals from Commonwealth agency's denial of a right-to-know request).

Quite simply, without construing federal statutes that pertain to the public or non-public nature of records, OOR cannot perform a core adjudicatory function. Indeed, this Court repeatedly recognizes OOR's interpretation of federal statutes in determining the public nature of records. *See, e.g., Easton Area Sch. Dist. v. Express Times*, 41 A.3d 977 (Pa.Cmwlth.2012) (OOR construed Family Education Rights and Privacy Act, FERPA, 20 U.S.C. § 1232g,); *Fort Cherry Sch. Dist. v. Acton*, 38 A.3d 1092 (Pa.Cmwlth.2012) (OOR construed FERPA and 42 U.S.C. § 300g); *Fort Cherry Sch. Dist. v. Coppola*, 37 A.3d 1259 (Pa.Cmwlth.2012) (OOR interpreted 26 U.S.C. § 6103(a) to exempt 1099s); *Office of the Budget v. Campbell*, 25 A.3d 1318 (Pa.Cmwlth.2011) (same as to W–2s).

Because it is charged with determining the public nature of records requested under the RTKL, OOR enjoys the authority to interpret federal statutes that involve public records and public access to agency information.

Both parties assert EPCRA applies to the requested records here. Therefore, OOR could not avoid interpreting EPCRA to determine the public nature of the records.

L & I cites *Advancement Project v. Department of Transportation*, 60 A.3d 891 (Pa.Cmwlth.2013), to support its position that OOR lacks authority to grant access to records under a federal statute. Ironically, Requester also cites this case as exemplifying the necessity for OOR to construe federal law. We examine the case.

In *Advancement Project*, a requester sought certain information from drivers' licenses, including names, addresses, and dates of birth. Relevant here, this Court recognized that federal law, the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721–2725 (DPPA), prohibited release of the requested information.

However, the requester argued that the federal statute did not protect the records because her request fell within one of the statutory exceptions to nondisclosure. In particular, because she sought the information for research purposes, the requester argued the DPPA did not bar her access. Essentially, the requester asked OOR to honor the terms of the federal statute and to decide her request as though OOR administered the DPPA. This Court held OOR lacked the authority to administer another statute, and its preconditions to access.

Contrary to L & I's characterization of *Advancement Project*, this Court did not hold that construing the DPPA exceeded OOR's authority or jurisdiction. Nevertheless, L & I's point that OOR lacks the authority to enforce or administer a federal statute, and means of public access thereunder, is well-taken. As discussed more fully below, OOR possesses only the authority to direct disclosure of records in accordance with the process set forth in the RTKL.

In sum, we conclude OOR has the authority to interpret EPCRA and any other federal laws that agencies or requesters raise in a right-to-know appeal.

**B. Public Status of Records**

Requester asserts the Tier II Database is public as a matter of federal law pursuant to EPCRA. The RTKL provides that federal statutes supersede its terms so that EPCRA governs public nature here. As a result, Requester contends, OOR did

not err in concluding the RTKL exceptions L & I asserted do not arise.

L & I disputes the characterization of the Tier II Database as public. It argues facility-specific records may be available through a request for information submitted under EPCRA. Because Requester made a right-to-know request instead, all of the RTKL provisions regarding both substance (Section 708(b) exceptions) and process (request and review criteria) apply. For the following reasons, we accept L & I's argument.

### 1. EPCRA

 Significantly, EPCRA is a "community" right-to-know statute. However, its purpose is reporting of hazardous chemicals, not access to records. *See Don't Waste Ariz. v. McLane Foods*, 950 F.Supp. 972, 979 (D.Ariz.1997) ("The purpose of the EPCRA reporting requirements is to provide citizens with information about environmental hazards in their communities and to allow emergency response agencies to plan for potential environmental emergencies."); *Delaware Valley Toxics Coal. v. Kurz–Hastings, Inc.*, 813 F.Supp. 1132 (E.D.Pa.1993). Safety is the goal of the statute. Availability of information to the public is a means to that end.

L & I argues that OOR committed legal error when it concluded the records are public pursuant to EPCRA. L & I asserts that OOR disregarded the procedural constraints contained in EPCRA that restrict public access to inspection at a specified location during normal business hours. Further, L & I contends, EPCRA expressly limits information requests to specified individual facilities.

Requester counters that disclosure of the Tier II Database is mandatory under the RTKL because Tier II information is available to the public under EPCRA.

OOR properly deemed EPCRA a federal statute establishing the public nature of documents, which, Requester posits, ended the debate about public status.

Federal statutes and regulations that designate public nature supersede the RTKL. Section 306 of the RTKL, 65 P.S. § 67.306. Therefore, to discern public status, we analyze the alleged public nature of the records under EPCRA.

Regarding availability to the public, Section 324 of EPCRA states:

> Each emergency response plan, material safety data sheet, list described in section 11021(a)(2) of this title, *inventory form*, toxic chemical release form, and follow[-]up emergency notice *shall be made available to the general public, consistent with section 11042* of this title [(relating to trade secrets)], *during normal working hours at the location or locations designated* by the Administrator, Governor, State emergency response commission, or local emergency planning committee, as appropriate. Upon request by an owner or operator of a facility ... the State emergency response commission ... shall withhold from disclosure under this section the location of any specific chemical [(it seeks to protect as confidential)]. . . .

42 U.S.C. § 11044(a) (emphasis added).

EPCRA also provides, in a section addressing the Inventory Forms, and the availability of Tier II information:

> (3) Availability to the public.
>
> (A) In general. *Any person may request* a State emergency response commission ... for *tier II information* relating to the preceding calendar year *with respect to a facility*. Any such request shall be in writing and *shall be with respect to a specific facility*.

(B) Automatic provision of information to the public. A ny tier II information which a State emergency response commission or local emergency planning committee has in its possession *shall be made available to a person making a request under this paragraph in accordance with section 324* [42 U.S.C. § 11044]. If the State emergency response commission or local emergency planning committee does not have the tier II information in its possession, upon a request for tier II information the State emergency response commission or local emergency planning committee shall, pursuant to paragraph (1), request the facility owner or operator for tier II information with respect to a hazardous chemical ... and make such information available in accordance with section 324 [42 U.S.C. § 11044] to the person making the request.

42 U.S.C. § 11022(e)(3) (emphasis added). By its express terms, this section applies to any person making a request under EPCRA, *not* under the RTKL. Moreover, the provision specifies a mechanism for obtaining Tier II information, and sets forth the conditions for making such a request.

Section 324 of EPCRA, 42 U.S.C. § 11044, provides that Tier II Inventory Forms shall be made available during "normal working hours" at designated locations. Thus, the records are available to be inspected during business hours, where and when a facility or other location may monitor inspections.

Notably, these provisions regarding public access pertain to conditions under which Tier II information is *available.* EPCRA does not state, unequivocally, that Tier II information is public. More fully developed below, "availability to the public," without more, does not establish the public nature of a record.

## 2. Intersection of RTKL with Other Laws

The RTKL distinguishes between the public nature of records and access to records. In particular, Section 306 of the RTKL, entitled "Nature of document," states: "Nothing in this act shall supersede or modify the *public* or nonpublic *nature* of a record or document *established in Federal* or State *law,* regulation or judicial order or decree." 65 P.S. § 67.306 (emphasis added). However, in Section 3101.1 of the RTKL, separate reference is made to access to records. 65 P.S. § 67.3101.1 (when provisions of the RTKL *"regarding access* to records conflict" with federal statutes, the RTKL is superseded) (emphasis added). We treat these concepts as distinct; otherwise, one of the RTKL provisions would be superfluous, contrary to presumed legislative intent. *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.").

OOR reasoned Section 324 of EPCRA, regarding "availability to [the] public," dictated the outcome here because EPCRA permitted access to the records by an information request under EPCRA. OOR thus construed "availability to the public" as sufficient to designate the records as "public." Considering the statutes as a whole, we disagree.

### a. Public Nature (Section 306)

Quoted above, Section 306 of the RTKL provides that federal law operates to supersede contrary provisions when that law establishes public nature. "Establish" means "to institute (as a law) permanently by enactment or agreement." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 427 (11th ed. 2003). By its plain meaning, the "nature" of a document implicates the innate or intrinsic characteristics of a record,

its essence, without regard to surrounding circumstances. 1 Pa.C.S. § 1903.

■ Once "established" by statute as "public," a record is no longer subjected to the traditional public record analysis under the RTKL. Given this significant consequence, a statute should be clear when it establishes the public nature of records. EPCRA lacks clarity on this point.

As with the RTKL, federal statutes often distinguish between the designation of a record as "public," and provisions for public access. *Compare* 47 U.S.C. § 412 (providing documents filed with Telecommunications Commission are "preserved as public records") *with* 12 U.S.C. § 4543 (regarding access to mortgage information; setting conditions for availability and setting parameters for restricting access, as determined by the director of the agency) *and* 33 U.S.C. § 1513 (regarding deepwater port records, entitled "public access to information" setting forth conditions for availability). Some federal statutes both confer public status, and prescribe a means by which an agency must afford access. *See* 29 U.S.C. § 1026(a) (annual reports "shall be public information and the Secretary shall make any such information and data available for inspection").

The phrase "availability to public," imposes a duty on an agency to provide public access to certain records as that agency sees fit to fulfill its duty. The focus is on the manner of providing the record, not the nature of the record. Thus, certain federal laws establish a means of accessing reports required by the statutory scheme, whereas others establish

the public nature of the records without setting conditions to access.

EPCRA falls into the former category. EPCRA sets forth a means of requesting reports under that statute. Nowhere does EPCRA state that Tier II information "shall be public," or the like. OOR thus erred in concluding EPCRA qualified as a federal statute that established the public nature of Tier II information.[6]

### b. Public Access (Section 3101.1)

In addition to misconstruing EPCRA's "availability to the public" provision as establishing the public nature of Tier II information, OOR's determination also disregarded the restricted means of access under EPCRA. OOR determined that EPCRA does not require information requests to identify a specific facility. This disregarded the terms in EPCRA that require specification, 42 U.S.C. § 11022(e)(3). By requiring disclosure of the entire Tier II Database, save those labeled confidential,[7] OOR allowed Requester to circumvent EPCRA's statutorily prescribed procedural path.

Conflicts as to public access, as opposed to public nature, are governed by Section 3101.1 of the RTKL. Specifically, Section 3101.1 of the RTKL provides "[i]f the provisions of [the RTKL] *regarding access* to records *conflict* with any other federal or state law, *the provisions of this act shall not apply.*" 65 P.S. § 67.3101.1 (emphasis added).

Access under EPCRA is limited to facility-specific requests, and inspection during working hours at the facility or other loca-

---

6. Also, EPCRA places conditions on access as discussed below. For this additional reason, we conclude EPCRA was not intended to establish the public nature of the records.

7. By directing disclosure of records not designated as confidential, OOR accepted the trade

secrets protection conferred by EPCRA, not the RTKL. OOR did so without examining whether non-disclosure of designated records impacted the alleged public nature of the Tier II information.

tion designated by the facility. As such, there is a conflict to the extent the RTKL would permit greater access. Under the direction of Section 3101. 1, RTKL provisions for greater access would not apply. Thus, to the extent RTKL provisions require production of the entire Tier II Database, and production of records without facility-specific requests, those provisions would be superseded. OOR erred when it held otherwise.

Concomitantly, OOR is not in a position to enforce EPCRA's conditions on public access under the RTKL. *See Advancement Project* (recognizing the difference between determining public nature and holding a requester and an agency to standards for disclosure set by a separate federal law).

Other statutes that provide other avenues, and set other parameters for access to records, like EPCRA, operate independently of the RTKL.[8] Pursuant to Section 3101.1 of the RTKL, their procedural hurdles, and exceptions, remain intact and enforceable. Requester cannot cherry-pick the convenient provisions of EPCRA, which indicate public availability, while neglecting the federal statute's applicable request and review criteria.

■ In addition, a right-to-know request cannot be refashioned by OOR or this Court in the interest of providing responsive records. *Advancement Project; Pa. State Police v. Office of Open Records (George)*, 995 A.2d 515 (Pa.Cmwlth.2010). Requester failed to meet the criteria es-

tablished by EPCRA for accessing Tier II information. Most notably, the Request did not specify a facility. In removing this criterion and holding the entirety of the Tier II Database was subject to disclosure in digital format, contrary to Section 3101.1 of the RTKL, OOR erred.

Because the Tier II Database is not unconditionally public as a matter of law, and the records are sought under the RTKL, the Section 708(b) exceptions asserted must be considered.

### 3. Section 708(b) Exceptions

L & I argues OOR erred as a matter of law when it failed to consider the exceptions contained in Section 708(b) of the RTKL. L & I asserts the records are protected under both the public safety and the physical security exceptions. Therefore, L & I asks this Court to reverse the OOR's determination, and to hold the records are protected under the RTKL.

Requester responds that the records are not exempt under either exception because L & I failed to meet its burden of proof. Requester notes that PEMA recognizes Tier II information as public, undercutting any security threat.

■ The RTKL contains an express presumption of openness as to any records in possession of a Commonwealth agency. *Bowling.* Under the RTKL, a Commonwealth agency must disclose requested records within its possession, custody or control, unless it can establish the records

---

8. EPCRA also contains a preemption provision, providing that the chapter shall not preempt any state or local law. Section 321 of EPCRA, 42 U.S.C. § 11041. That provision, however, does not impair our ultimate conclusion.

In context, the preemption applies as to any state or local law dealing with the same subject matter, that being safety of communities where hazardous chemicals are housed.

Thus, EPCRA does not supersede the state Hazmat Act, which also contains chemical reporting and civil suit provisions as a means of achieving safety. The Hazmat Act works in tandem with EPCRA, containing more stringent provisions that control. Section 304 of the Hazmat Act, 35 P.S. § 6022.304. Notably, the Hazmat Act does not contain any provisions regarding availability to the public or public access.

are exempt. Sections 701 and 901 of the RTKL, 65 P.S. §§ 67.701, 67.901.

As there is no dispute the records are in its possession, L & I bears the burden of proving the information is exempt from disclosure by a preponderance of the evidence. Section 708(a) of the RTKL, 65 P.S. § 67.708(a); *Dep't of Transp. v. Office of Open Records (Aris)*, 7 A.3d 329 (Pa. Cmwlth.2010). Here, L & I asserted two grounds for denying access, Sections 708(b)(2) and (b)(3), security exceptions enumerated in the RTKL.

■ Section 708(b)(2) is often referred to as the "public safety" exception. In analyzing this exception, we apply a two-pronged test: (1) the record at issue must relate to a law enforcement or public safety activity; and, (2) disclosure of the record would be "reasonably likely" to threaten public safety or a public protection activity. *Carey v. Dep't of Corr.*, 61 A.3d 367 (Pa.Cmwlth.2013) (construing 65 P.S. § 67.708(b)(2)); *Adams v. Pa. State Police*, 51 A.3d 322 (Pa.Cmwlth.2012).

■ Section 708(b)(3) also incorporates a "reasonable likelihood" test. Paraphrased, it provides records may be protected if their disclosure is reasonably likely to threaten the physical security of any building, infrastructure or public utility. Section 708(b)(3) of the RTKL, 65 P.S. § 67.708(b)(3).

■ Because it concluded the records are public as a matter of federal law, OOR did not evaluate the merit of these exceptions. Although this Court may engage in fact-finding, *Bowling*, we decline to do so when OOR has not weighed the RTKL exceptions initially. Our fact-finding role is best reserved for unique occasions, such as where the record is exhaustive, efficiency is maximized, and OOR initially considered the exceptions asserted. *See Dep't of Pub. Welfare v. Eiseman*, 85 A.3d 1117

(Pa.Cmwlth.2014) (*en banc*). Moreover, the interpretation of Section 708(b) exceptions is squarely within OOR's agency expertise. Accordingly, we remand to allow OOR to evaluate the Section 708(b) exceptions in the first instance. *Bagwell; Barnett v. Dep't of Pub. Welfare*, 71 A.3d 399 (Pa.Cmwlth.2013).

## III. Conclusion

OOR enjoys authority under the RTKL to interpret federal statutes when performing its adjudicatory role.

Nonetheless, we recognize the distinction between interpreting terms of a federal statute and effectuating public access under a separate statutory scheme. Here, OOR invoked EPCRA's provisions as establishing the public nature of Tier II information, but it neglected the reduced access EPCRA permits. OOR erred in both respects. EPCRA provides the records will be made *available* under certain conditions, which is different than clearly establishing the public nature of records.

As EPCRA did not establish public nature of the requested records, the RTKL exceptions asserted must be considered.

For the foregoing reasons, the determination of the OOR is vacated, and the case is remanded for disposition within thirty (30) days on the current record. However, in the event OOR decides supplementation of the record is appropriate, this timeframe for adjudication is extended to sixty (60) days.

### ORDER

**AND NOW,** this 5th day of May, 2014, the Final Determination of the Office of Open Records is **VACATED,** and the matter is **REMANDED** in accordance with the foregoing opinion. The Office of Open Records is directed to adjudicate the matter within 30 days of the date of this order,

unless it supplements the record, in which case, the matter shall be adjudicated within 60 days.

Jurisdiction is relinquished.

DISSENTING OPINION BY President Judge PELLEGRINI.

At issue in this case is whether a Tier II hazardous chemicals inventory database (Tier II Database) are public records, and if so, do they fall within one of the exceptions to disclosure contained in the Right–to–Know Law (RTKL).[1] I disagree with the majority's conclusion that the records are not public or that access to those records is limited by the federal Emergency Planning and Community Right–to–Know Act (EPCRA), 42 U.S.C. §§ 11001–11050.

Section 305 of the RTKL, 65 P.S. § 67.305, entitled "Presumption" states:

(a) **General rule.**—A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if:

(1) the record is exempt under section 708;

(2) the record is protected by a privilege; or

(3) **the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree.** (Emphasis added.)

Under this provision, a record is still presumed to be a public record until it is found to be exempt from disclosure.

Chapter 7 of the RTKL deals with the procedure by which one requests public records and the obligation of the public entity to respond to those requests. 65 P.S. § 67.701–708. Section 701 of RTKL,

65 P.S. § 67.701, entitled "Access" deals with how records should be provided to the public and states:

(a) **General rule.—Unless otherwise provided by law,** a public record, legislative record or financial record shall be accessible for inspection and duplication in accordance with this act. A record being provided to a requester shall be provided in the medium requested if it exists in that medium; otherwise, it shall be provided in the medium in which it exists. Public records, legislative records or financial records shall be available for access during the regular business hours of an agency. (Emphasis added).

Section 3101.1 of the RTKL, 65 P.S. § 67.3101.1, also provides that "[i]f the provisions of this act regarding access to records conflict with any other federal or state law, the provisions of this act shall not apply." While access can be limited by other state or federal law, it has no effect on whether the document or information is a public record.[2]

The majority finds that the requested information need not be produced because it is not a public record, and that access is limited under Sections 701 and 3101.1 of the RTKL, 65 P.S. §§ 67.701, 67.3101.1. Specifically, it finds that under Section 324 of EPCRA, access to the requested documents is limited: they "shall be made available to the general public ... during normal working hours at the location or locations designated by the Administrator, Governor, State emergency response commission, or local emergency planning committee, as appropriate." 42 U.S.C. § 11044(a). In effect, it says the records are only available at designated locations

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. Chapter 9 of the RTKL, 65 P.S. §§ 67.901–67.905, deals with how the agency must respond to the RTKL request.

and times but the records can be examined but not duplicated, and the procedures set forth in Chapter 9 of the RTKL on how the agency is to respond to the request are not applicable. Again, relying on Section 312 of EPCRA, 42 U.S.C. § 11022(e)(3), the majority finds that a request can only be made for a specific facility, not all facilities.

After stating that federal statutes and regulations can supersede the RTKL, the majority then goes on to find that the information regarding hazardous materials is not a public record under EPCRA, stating:

> The phrase "availability to public," imposes a duty on an agency to provide public access to certain records as that agency sees fit to fulfill its duty. The focus is on the manner of providing the record, not the nature of the record.

> Thus, certain federal laws establish a means of accessing reports required by the statutory scheme, whereas others establish the public nature of the records without setting conditions to access.

> EPCRA falls into the former category. EPCRA sets forth a means of requesting reports under that statute. Nowhere does EPCRA state that Tier II information "shall be public," or the like. OOR thus erred in concluding EPCRA qualified as a federal statute that established the public nature of Tier II information.

(op. at 832) (footnote omitted).

By stating that the requested record is not a public record, the majority appears to be saying that even though the information can be disclosed under EPCRA, *albeit* with limited access, the fact that it is not a public record under EPCRA means that if the "public safety" exception applies, for which it remands to the OOR to determine, then even the information made available under EPCRA is not subject *to* disclosure.

Even I fully understand the majority's reasoning in arriving at the conclusion; we don't look to EPCRA but to the RTKL to determine what records kept by Pennsylvania are public records. What is a public record is defined under Section 201 of the RTKL as a "record" of a Commonwealth or local agency is (1) not exempt under Section 708; and (2) not exempt from being disclosed under any other federal or state law or regulation or judicial order. 65 P.S. § 67.301. The majority does not find that the records are exempt under EPCRA, only that access to those records is limited so the presumption created under Section 305 of the RTKL, 65 P.S. § 67.305, that all records are public, is maintained.

The core reason that I dissent is the majority's use of EPCRA in making the determination as to whether the documents are accessible. Section 301 of EPCRA requires that "the Governor of each State shall appoint a State emergency response commission." 42 U.S.C. § 11001(a). It goes on to provide the "State emergency response commission shall establish procedures for receiving and processing requests from the public for information under section 11044 of this title, including tier II information under section 11022 of this title." *Id.* While it was not clear at the time this Act was passed in 1986, since then, it has been held that the federal government cannot commandeer state government to carry out federal programs or to mandate states to implement certain state actions. *See New York v. United States,* 505 U.S. 144, 176, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (declaring unconstitutional under the Tenth Amendment a take-title provision in Section 5 of the Low–Level Radioactive Waste Policy Amendments Act of 1985, 42

U.S.C. § 2021e, which required states that did not enact the Waste Policy Act to take full liability for all the waste within their borders because "Congress may not simply 'commandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.' "). *See also Printz v. United States,* 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (extending New York's non-commandeering rule from state legislatures to executive officials by declaring unconstitutional provisions of the Gun Control Act, 18 U.S.C. § 922, commandeering state and local law enforcement officials to conduct background checks on certain gun purchasers).

Nonetheless, Pennsylvania implemented the provisions of EPCRA by enacting the Hazardous Material Emergency Planning and Response Act (Hazmat Act), Act of December 7, 1990, P.L. 639, *as amended,* 35 P.S. §§ 6022.101–6022.[3] The Hazmat Act, not EPCRA, imposes the duty on state officials using state money to gather and maintain hazardous material information. It is the records kept under that Act that are being requested. Because there is no provision in the Hazmat Act that limits access to those records which are required to be kept thereunder, the exemptions contained in Sections 701 and 3101.1 of the RTKL simply do not apply.[4]

The next question is whether the records are exempt from disclosure under Section 708(b)(2) or (3) of the RTKL, 65 P.S. § 67.708(b)(2), (3), known as the "public safety" exceptions. Generally, those provisions exempt from disclosure information that would threaten public safety activity or if its disclosure is reasonably likely to threaten the physical security of any building, infrastructure or public utility. Normally, in making that determination, we would determine whether there would be a reasonable likelihood if public safety would be harmed if the information is released.

In conducting that analysis, the OOR determined that since information had to be released under EPCRA, there was a legislative determination that it would not harm public safety. The majority agrees that at least there has been a federal Emergency Planning and Community Right–to–Know Act that records for specific sites have to be released with limited access which is a reasonable conclusion, given the title of the Act. *See also* the

---

**3.** One of the purposes of the Hazmat Act was to "[d]esignate the Pennsylvania Emergency Management Council as the Commonwealth's emergency response commission and establish an emergency planning district and a local emergency planning committee in each county of this Commonwealth to act in accordance with the provisions of the Emergency Planning and Community Right–To–Know Act of 1986 (Title III of Public Law 99–499, 42 U.S.C. § 11001, et seq.) also referred to in this act as SARA, Title III." Section 102(b)(2), 35 P.S. § 6022.102(b)(2).

**4.** The majority does not address the provisions of the Hazmat Act, the Act which is the only Act that places upon the Commonwealth and its officials the obligation to keep the Tier II database. It does not address the applicability of the Hazmat Act because it contends its applicability has been waived because of the Requestor's appeal to OOR and only mentions EPCRA and not the Hazmat Act. Notably, in its briefs, the Department of Labor & Industry does not object to the Requestor's raising the Hazmat Act, which is understandable given that it raises bulletins from other states as a reason the EPCRA does not require disclosure, even though it had not given that as a reason for nondisclosure previously. Simply put, because the Hazmat Act implements EPCRA in Pennsylvania, raising EPCRA necessarily involves the application of the Hazmat Act. Of course, because this is a dissent, the majority does not to agree with this interpretation, which allows Requestor to make a new request under the provisions of the Hazmat Act.

Worker and Community Right–to–Know Act, Act of October 5, 1984, P.L. 734, 35 P.S. §§ 7301–7320. The question then becomes that while specific sites have to be released, does a list of the Tier II sites and what hazardous chemicals are stored at those sites have to be released. Again, there has been a legislative determination that those lists can be released.

Section 212 of the Hazmat Act, 35 P.S. § 6022.212, provides that a list of hazardous materials similar to the one sought here be provided to the General Assembly every year. It provides:

> PEMA [Pennsylvania Emergency Management Council] shall submit an annual report to the General Assembly by October 1 of each year on the activities it has undertaken to implement this act. The report shall include, but not be limited to:
>
> (1) An accounting of revenues and expenditures from the Hazardous Material Response Fund and the county Hazardous Material Emergency Response Accounts along with a description of the projects undertaken with these funds and a projection of future activities.
>
> (2) The status of local emergency planning committee activities.
>
> **(3) The status of facilities required to comply with this act, including their number, location and the number and amount of chemicals reported.**

---

**1.** Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

**2.** The United States Supreme Court summarized EPCRA as follows:

EPCRA establishes a framework of state, regional, and local agencies designed to inform the public about the presence of hazardous and toxic chemicals, and to provide for emergency response in the event of health-threatening release. Central to its operation are reporting requirements compelling users of specified toxic and hazard-

> (4) The number and nature of emergency notifications handled by PEMA. (Emphasis added.)

*Id.* Because there has been a legislative determination that a public report has to be given each year, then, similarly, there has been a legislative determination that the records do not fall within the public safety exception.

Accordingly, for the foregoing reasons, I would affirm the Office of Open Records and order that the requested information be produced.

## DISSENTING OPINION BY Judge BROBSON.

At issue in this case is whether William Heltzel (Requester) should be entitled, under the Pennsylvania Right–to–Know Law (RTKL),[1] to a copy of the Tier II hazardous chemicals inventory database (Tier II Database) that the Department of Labor and Industry (L & I) maintains pursuant to federal law, specifically the federal Emergency Planning and Community Right–to–Know Act of 1986, 42 U.S.C. §§ 11001–11050 (EPCRA).[2] I would reverse the final determination of the Office of Open Records (OOR), which ordered disclosure under the RTKL of certain EPCRA records.

This case involves a straightforward application of Section 3101.1 of the RTKL, which provides:

ous chemicals to file annual "emergency and hazardous chemical inventory forms" and "toxic chemical release forms," which contain, *inter alia*, the name and location of the facility, the name and quantity of the chemical on hand, and, in the case of toxic chemicals, the waste-disposal method employed and the annual quantity released into each environmental medium.

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 86–87, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

If the provisions of this act regarding access to records conflict with any other Federal or State law, the provisions of this act *shall not apply.*

(Emphasis added.) EPCRA contains provisions governing access to records that differ materially from the more liberal access provisions in the RTKL. EPCRA provides the state agency that maintains EPCRA records 45 days to respond to a request for records. 42 U.S.C. § 11022(e)(3)(d). Under the RTKL, by contrast, an agency must respond to a request within five business days of receipt of the request by the agency's open records officer, with the ability of the agency to invoke a 30–day extension under certain circumstances. Sections 901 and 902 of the RTKL. The RTKL also would purport to allow access to the entirety of the L & I-maintained Tier II Database as a "public record," assuming no exemptions apply. Section 701(a) of the RTKL. EPCRA, by contrast, only allows access to EPCRA records based on a facility-specific request. 42 U.S.C. § 11022(e)(3).[3] In other words, EPCRA does not authorize *general* public access to a state-maintained database that would identify and provide information with respect to all reporting facilities in the Commonwealth, which is the type of access Requester seeks in this case. Finally, EPCRA provides only for a right of inspection. 42 U.S.C. § 11044. The RTKL, by contrast, provides for access for inspection *and duplication.* Section 701(a) of the RTKL.

In crafting EPCRA's public access provisions, it is apparent that the federal government struck a careful balance between the right of citizens and the need of first responders to know of the presence of hazardous chemicals within a particular facility or facilities in a particular community,[4] with the obvious risk to public safety that would arise if those who would seek to inflict harm could obtain unfettered access

---

3. The governing statutory language provides, in relevant part:

(3) Availability to the public.

(A) In general. Any person may request a State emergency response commission ... for tier II information relating to the preceding calendar year with respect to a facility. Any such request shall be in writing and shall be with respect to a specific facility.

(B) Automatic provision of information to the public. Any tier II information which a State emergency response commission or local emergency planning committee has in its possession shall be made available to a person *making a request under this paragraph* in accordance with section 324 [42 U.S.C. § 11044]. If the State emergency response commission or local emergency planning committee does not have the tier II information in its possession, upon a request for tier II information the State emergency response commission or local emergency planning committee shall, pursuant to paragraph (1), request the facility owner or operator for tier II information with respect to a hazardous chemical ... and make such information available in accordance with section 324 [42 U.S.C. § 11044] to the person making the request.

42 U.S.C. § 11022(e)(3) (emphasis added). OOR, at pages 7 and 8 of its decision, erroneously interpreted the first sentence of subparagraph (B) independently of subparagraph (A), concluding that where Tier II information is already in the state agency's possession, the requirement that a request for access be facility-specific does not apply. OOR failed to consider the phrase "a request under this paragraph," meaning paragraph (3) of Section 11022(e) of EPCRA, in that sentence. The only portion of paragraph (3) that discusses a request for access is subparagraph (A), which requires that such a request be facility-specific.

4. "The purpose of the EPCRA reporting requirements is to provide citizens with information about environmental hazards *in their communities* and to allow emergency response agencies to plan for potential environmental emergencies." *Don't Waste Ariz. v. McLane Foods,* 950 F.Supp. 972, 979 (D.Ariz. 1997) (emphasis added).

to a state-wide catalogue of facilities that house hazardous chemicals.[5] If the RTKL can override this federal judgment and provide Requester, whom I presume is a person of strong moral fiber, greater access to EPCRA hazardous chemical records than the federal law allows, then the RTKL would become a tool for those who seek to harm the very citizenry that the federal law was enacted to protect.[6]

Accordingly, in light of the foregoing conflicts regarding access to EPCRA records between the RTKL and EPCRA, and pursuant to Section 3101.1 of the RTKL, I would hold that the RTKL does not apply to Requester's request for a copy of the Tier II Database. Instead, Requester must seek access to Tier II and other EPCRA records from L & I pursuant to the terms of EPCRA.

Judge LEAVITT joins in this dissent.

---

**5.** Because I believe this risk to be obvious, even if the RTKL applies in this case, as the majority holds, I see no reason to remand to OOR to consider whether the Tier II Database is exempt from disclosure under the public safety or physical security exceptions of the RTKL. Section 708(b)(2), (3) of the RTKL.

**6.** "A Commonwealth agency may not deny a requester access to a public record due to the intended use of the public record by the requester unless otherwise provided by law." Section 301(b) of the RTKL.