**COMMONWEALTH of Pennsylvania, GOVERNOR'S OFFICE OF ADMINISTRATION, Petitioner**

v.

**PENNSYLVANIANS FOR UNION REFORM, INC., Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2014.

Decided Nov. 20, 2014.

---

needs of the government." *MCARE Cases,* 77 A.3d at 604.

62

Patrick O. Kerwin, Deputy Chief Counsel, and Crystal D. Fox, Senior Counsel, Harrisburg, for petitioner.

Craig J. Staudenmaier, Harrisburg, for respondent.

BEFORE: RENÉE COHN JUBELIRER, Judge, and P. KEVIN BROBSON, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge ANNE E. COVEY.

The Governor's Office of Administration (OA) petitions this Court for review of the Office of Open Records' (OOR) February 26, 2014 Final Determination (Final Determination) granting Pennsylvanians For Union Reform Inc.'s (Requester) appeal and directing OA to provide the counties of residence for 9,444 Commonwealth employees. There are four issues for this Court's review: (1) whether Commonwealth employees' counties of residence is a "component part" of home address under the Right to Know Law (RTKL)[1] and thereby are also exempt from disclosure where home address has been exempted;

(2) whether disclosure of Commonwealth employees' counties of residence pursuant to the RTKL undermines the redaction of their home addresses; (3) whether Section 614 of The Administrative Code of 1929 (Administrative Code)[2] requires disclosure of Commonwealth employees' counties of residence; and, (4) whether Requester is entitled to attorneys' fees. After review, we affirm.

On November 25, 2013, Requester filed a RTKL request seeking, inter alia, the address and county of residence of all Commonwealth employees whose information was ordered to be released in the matter of Campbell v. Office of Open Records, OOR Dkt. AP 2013–1371.[3] On January 3, 2014, OA issued a Final Response which granted in part and denied in part the request, providing the home addresses and counties of residence for 5,994 of the 15,438 employees. OA refused to disclose the home addresses or county of residence for the remaining 9,444 employees. Rather than provide a basis for its refusal, OA merely explained that home address disclosure was currently being litigated before the OOR and the Commonwealth Court. On January 9, 2014, OA issued a Supplement to its Final Response (Supplemental Response) which restated OA's decision, and added numerous statutory references in support of its refusal to disclose home addresses and counties of residence.[4]

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. Act of April 9, 1929, P.L. 177, added by Section 3 of the Act of September 27, 1978, P.L. 775, as amended, 71 P.S. § 234.

3. In Campbell, OA denied a RTKL request seeking the names of Commonwealth employees whose paychecks were subject to "fair share" deductions. "Fair share" deductions are fees assessed against a non-union employee's paycheck for the cost of union services provided to the bargaining unit on account of

the non-union employee being a part of the bargaining unit. On appeal, the OOR ordered release of the information.

4. In its Supplemental Response, OA provided the following rationale: "Home address and county of residence records are withheld where either an individual employee or the employer has identified a need for non-disclosure based on one or more of the following permissible reasons for non-disclosure found at 65 P.S. § 67.708(b)[.]" Reproduced Record (R.R.) at 3664a. The Supplemental Response referenced the following RTKL sections:

On January 27, 2014, Requester filed a timely appeal with the OOR challenging **only** OA's refusal to disclose the subject employees' counties of residence and withdrawing its request for all other information. By January 28, 2014 letter, the parties were invited to submit information and argument to the OOR. On February 14, 2014, OA submitted its position statement (Position Statement) and, rather than include documentary evidence, requested the OOR to take official notice of the evidence it had furnished to support redaction of certain Commonwealth employee home addresses in the matter of *Pennsylvanians for Union Reform v. State Employees Retirement System*, OOR Dkt. AP 2013–1830. OA also asserted in its Position Statement

that it had properly denied disclosure because county of residence is a part of an address (which had properly been denied), that revealing county of residence would divulge too much information where address disclosure had been denied,[5] and that Section 614 of the Administrative Code did not require such disclosure.

■ On February 18, 2014, OA sent an email notice to affected employees advising them of Requester's RTKL request and the pending appeal before the OOR, and notifying them that they could ask to participate.[6] On February 26, 2014, the OOR, without holding a hearing, issued its Final Determination granting Requester's appeal and directing OA to disclose the subject employees' counties of residence.[7] OA appealed to this Court.[8]

---

708(b)(1) (personal security exemption), 708(b)(2) (records relating to law enforcement and public safety activities), 708(b)(3) (relating to building safety), 708(b)(4) (relating to computer security), 708(b)(6) (regarding personal identification information), 708(b)(16) (records regarding criminal investigations), 708(b)(17) (records regarding noncriminal investigations), and 708(b)(30) (regarding information of a minor). *See* R.R. at 3364a.

5. In support of its position, OA referenced the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA) regulations, 45 CFR § 164.514. OA also cited a website pertaining to de-identification standards: www.ehealthinformation.ca/knowledgebase/article/AA-00206/6/De-identification-Practices/Are-there-any-deidentificationstandards./html.

6. The February 18, 2014 email notice, which was consistent with instructions contained in a February 14, 2014 email from the OOR to OA and Requester, specifically advised the affected employees that:

 **Under the RTKL, you are considered to have a direct interest in the records being requested. A person with a direct interest in a record that is subject to an appeal may file a written request to:**
 - Provide information (of any kind, as may be relevant to the appeal); or
 - Appear before the appeals officer; or

 - File information in support of the requester's or agency's position.
 You have 15 days from actual notice of appeal (which is today, unless you knew of the appeal beforehand), but in no case later than the date of the OOR's Final Determination, to provide information or your legal position to the OOR, appear before the appeals officer, or file information in support of the requester's or agency's position.
 . . . .
 The OOR's Final Determination will be issued on or before **February 26, 2014.** Any information you wish to contribute must be received by the OOR, OA and [Requester] prior to that date, and must include a signed *Request to Participate* to which you must attach any substantive information that you wish to provide. If you have any questions about this Notice, please contact the OOR appeals officer directly.
 Thank you.
 R.R. at 3764a–3765a.

7. The Final Determination also stated that the OOR received requests to participate from Commonwealth employees, but that OOR denied the requests because insufficient facts had been alleged to establish those employees' direct interests.

8. "This Court's standard of review of a final determination of the OOR is *de novo* and our scope of review is plenary." *Hunsicker v.*

The RTKL was designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials and make public officials accountable for their actions. The current version of the RTKL, passed in 2008, changed the method of access to an individual's personal information and set forth new criteria to determine whether information is protected from disclosure. Under the current RTKL, a record in the possession of a Commonwealth agency or local agency is presumed to be a public record unless[:] (1) the record is exempt under Section 708 [65 P.S. § 67.708]; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree. Section 305(a) of the RTKL, 65 P.S. § 67.305(a). Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1), entitled 'Exceptions for public records,' places the burden on the agency to prove by a preponderance of the evidence that a particular record is exempt from public access.[9]

*Office of the Governor v. Raffle,* 65 A.3d 1105, 1107 n. 1 (Pa.Cmwlth.2013) (citations omitted).

■■■ Section 708(b)(1)(ii) of the RTKL provides an exception to the disclosure requirements where a record disclosure "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. § 67.708(b)(1)(ii). "To establish this exception, an agency must show: (1) a reasonable likelihood of (2) substantial and demonstrable risk to an

individual's security if the information sought is not protected. We defined substantial and demonstrable as actual or real and apparent." *Carey v. Dep't of Corr.,* 61 A.3d 367, 373 (Pa.Cmwlth.2013) (citations and quotation marks omitted). "More than mere conjecture is needed." *Id.* (quoting *Governor's Office of Admin. v. Purcell,* 35 A.3d 811, 820 (Pa.Cmwlth. 2011)). Further, "[g]eneral, broad-sweeping conclusions will not be a substitute for actual evidence of the likelihood of a demonstrable risk to the individuals involved posed by a particular disclosure." *Delaware Cnty. v. Schaefer,* 45 A.3d 1149, 1158 (Pa.Cmwlth.2012). Section 708(b) of the RTKL, in pertinent part, also exempts the home address of a law enforcement officer from disclosure, as well as:

(A) A record containing all or part of a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number.

(B) A spouse's name, marital status or beneficiary or dependent information.

65 P.S. § 67.708(b)(6)(i).

Importantly, this Court in an *en banc* decision held in *Raffle:*

[T]here [is] no constitutional right to privacy in a home address and that the personal security exemption does not preclude the release of government employees' home addresses on the reasons advanced in the affidavit [attesting that disclosure of home address information increases the risk of social engineering attacks and identity theft].... **More-**

*Pennsylvania State Police,* 93 A.3d 911, 913 n. 7 (Pa.Cmwlth.2014).

**9.** "Although the general provisions of the [RTKL] must be liberally construed to effect its objects, the exemptions from disclosure

under Section 708(b) [of the RTKL] must be narrowly construed." *Hous. Auth. of the City of Pittsburgh v. Van Osdol,* 40 A.3d 209, 215 (Pa.Cmwlth.2012).

over, that rationale is equally applicable to the release of an employee's county of residence if it is contained in a public record.

*Id.* at 1109 (emphasis added).

■ In the instant action, there was no record evidence before the OOR demonstrating that the requested records fall within an exemption. In its Position Statement, OA requested "that the OOR permit OA to incorporate herein by reference the briefs and affidavits completed by Commonwealth agencies as directly interested third parties in OOR Docket No. AP 2013–1830, *PFUR v. SERS.*" Reproduced Record (R.R.) at 3701a. However, notwithstanding that the February 26, 2014 OOR Final Determination mentions OA's request, the OOR did not rely on those briefs and affidavits, nor did the OOR make them part of the record. OA had the burden to provide evidence of the reasonable likelihood of a substantial and demonstrable risk caused by the disclosure of the employees' counties of residence. OA was invited to submit evidence and could have done so; however, it chose to rely on its **request** that the OOR "incorpo-

rate ... by reference" evidence submitted in an entirely separate matter. *Id.* This, the OOR was not required to do.[10] Because the OOR did not make the referenced briefs or affidavits a part of the record, there was no record evidence demonstrating that an exemption is applicable in the instant matter.[11]

Notwithstanding, OA **did** include copies of those documents in its reproduced record to this Court in the instant matter. The documents include numerous Commonwealth agency job descriptions, employee confidentiality requests pertaining to address disclosure, and affidavits from various agency representatives expressing concerns about disclosure of employee home addresses.[12] **Even if we were to consider that evidence, it would not change the outcome.** As described by OA, the briefs and affidavits supported its justification for the refusal to provide **home addresses—not counties of residence.** Revealing counties of residence alone, without addresses, provides less specific geographic information, and thus, the impact of such disclosures alone must

---

**10.** Although the OOR is not a court, it is performing an adjudicatory function. "[A]s a general rule[,] a court may not take judicial notice of the records in another case[.]" *Commonwealth ex rel. Norman v. Stitzel,* 425 Pa. 184, 228 A.2d 373, 376 (1967).

**11.** The Dissent argues that the OOR should have considered the affidavits and briefs from the separate matter because "there can be a costly burden imposed on Commonwealth agencies in complying with broad RTKL requests." Dissenting op. at 73. Notably, OA's "costly burden" of providing copies of the very same documents from the separate matter to the OOR for use in this matter was not so "costly" as to prevent OA from including those documents in its Reproduced Record to this Court. Regardless, it is the General Assembly and not this Court who created the RTKL. The General Assembly set the disclosure requirements and presumably did so

with the knowledge, if not at the time the RTKL was enacted, at least since that time that requests made under the RTKL could be extremely burdensome to Commonwealth ·agencies. However, despite such realities, it enacted the RTKL establishing the aforementioned disclosure obligations and has not since amended those provisions. It is not for this Court to "second-guess policy choices of the General Assembly." *Ins. Fed'n of Pa., Inc. v. Commonwealth,* 601 Pa. 20, 970 A.2d 1108, 1122 n. 15 (2009).

**12.** The Dissent maintains that this matter should be remanded to the OOR so it may consider this evidence, or at the very least, this Court should review the evidence. "As to factual disputes, this Court may exercise functions of a fact-finder, and has the discretion to rely upon the record created below or to create its own." *Dep't of Labor & Indus. v. Heltzel,* 90 A.3d 823, 828 (Pa.Cmwlth.2014).

be particularly addressed by the agency denying disclosure. OA did not meet its burden of presenting specific evidence establishing "the **likelihood** of a demonstrable risk to the individuals involved posed by [the] **particular disclosure**[ ]" of counties of residence.[13] *Schaefer*, 45 A.3d at 1158 (emphasis added).

OA contends that the OOR erred when it failed to address OA's argument that county of residence is a "component part" of an address, and thus, where an address is legitimately exempted,[14] county of residence must also be exempted.[15] OA Br. at 13. OA acknowledges that "county of residence is not mentioned in many standard definitions of home address," however, it relies on a dictionary definition of address and the U.S. Postal Service definition of "complete address" to extrapolate that county of residence must be a component of home address. OA Br. at 13, 14. Further, OA makes the unsupported conclusory assertion that "where address is ex-

13. In its Position Statement to the OOR and in its brief to this Court, OA included references to statistical scientific evidence demonstrating that disclosure of an anonymous individual's geographic information such as county of residence increases the likelihood that the individual may be identified when considered along with other available data. However, that evidence does not establish that disclosing the employees' counties of residence alone, without other data, is "reasonably likely to result in a substantial and demonstrable risk" to the employees' security. 65 P.S. § 67.708(b)(1)(ii). The Dissent references "real and demonstrable security risks that certain Commonwealth employees face each day at work." Dissenting op. at 75. We do not disagree that certain employees may be at risk of harm. However, the question to be answered is not merely whether certain employees may be at risk, but whether **disclosing the employees' *counties of residence*** would result in "a reasonable likelihood of ... substantial and demonstrable risk to an individual's security[.]" *Carey*, 61 A.3d at 373 (citations and quotation marks omitted).

The Dissent also refers to an individual identified in the affidavits and briefs from the separate matter who allegedly fears retaliation by way of the filing of fraudulent liens against him and notes that, "liens are filed at the county level, and [the individual] has a rather unique last name." Dissenting op. at 75. However, such a conclusion ignores that there exist statutory and common law requirements before liens may be imposed on property. That conclusion also presumes that disclosure of county of residence would provide sufficient information to locate an individual's property to place a lien thereupon. Thus, we reject the Dissent's conclusion. *See*

*Hous. Auth. of the City of Pittsburgh v. Van Osdol*, 40 A.3d 209, 216 (Pa.Cmwlth.2012).

14. The Dissent asserts that "[b]ecause there has already been a conclusion that a substantial and demonstrable personal security risk exists if OA employees' home address information is released, these materials have acquired additional relevance for proving whether county of residence information for these Commonwealth employees should also be exempt from disclosure." Dissenting op. at 74. Requester stated in its appeal to OOR that it was appealing only the denial of county of residence information, and that "[a]ll other **information originally requested shall be considered withdrawn[.]**" R.R. at 3653a. Although OA argues that it properly withheld the 9,444 addresses under the personal security exemption and Requester did not appeal from that denial, Requester has not conceded that Commonwealth employees' home addresses are exempt from disclosure, and, in fact, Requester specifically noted in its appeal that the address request was withdrawn. Whether the home addresses were properly withheld under the personal security exemption is not at issue in this matter and thus, we do not rule on it.

15. It is noteworthy that in the aforementioned quote from *Raffle*, this Court referred to home address information separately from county of residence stating that the rationale regarding home address "is equally applicable to the release of an employee's county of residence if it is contained in a public record." *Raffle*, 65 A.3d at 1109. Thus, it appears that this Court has already concluded that county of residence is not a "component part of home address." OA Br. at 13.

empted by OA, street, post office box, city and ZIP code are exempted.[16] It does not make logical or practical sense to deny state and ZIP code, and then provide data about a geographical unit that is more, if not similarly, specific." OA Br. at 14–15. We disagree.

The RTKL does not define the term "address." "The Statutory Construction Act [of 1972, 1 Pa.C.S. §§ 1501–1991] provides that in interpreting a statute it is incumbent that the reviewing court endeavor to ascertain the intent of the Legislature and that when the words of a statute are clear and free of ambiguity we must interpret those words by their plain meaning." *Commonwealth v. Cox,* 603 Pa. 223, 983 A.2d 666, 703 (2009); *see also People United to Save Homes v. Dep't of Envtl. Prot.,* 789 A.2d 319, 328 (Pa. Cmwlth.2001) ("if a statutory provision is not ambiguous, the legislative intent should be effectuated by according the words their plain and ordinary meaning"). *Merriam–Webster's Collegiate Dictionary* (11th ed. 2004) **defines "address" as "5 a:** a place where a person or organization may be communicated with[;] b: directions for delivery on the outside of an object (as a letter or package)[;] c: the designation of place of delivery placed between the heading and salutation on a business letter[.]" *Id.* at 15. In ordinary use, such "directions for delivery" or "designation of place of delivery placed between the heading and salutation" do not generally include county of residence. *Id.* OA acknowledges as much in its brief: "Though **county of residence is seldom used in daily domestic postal activity,** it is a piece of geographic information which **could** contribute to a complete address." OA Br. at 13 (emphasis added). Following

OA's logic, any additional piece of geographic information such as "the Susquehanna Valley," or "the Midstate," or even "two doors down from the Denny's Restaurant," **could** aid in identifying a location; however, OA could not credibly contend that such information is part of an address. Interpreting the word address by its plain and ordinary meaning, we conclude that county of residence is not a "component part" of a home address.

 Even if we were to accept OA's argument that county of residence is a "component part" of a home address, it is indisputable that county of residence is not the same as a home address, and thus, disclosure is not exempted by Section 708(b) of the RTKL pertaining specifically to home addresses. Further, it is without question that revealing county of residence does not provide the same detailed information as a home address. The disclosure of that alleged "component part" alone does not have the same potential impact as publishing of the whole. As recognized in *Raffle,* there is no right to privacy in a home address and "that rationale is equally applicable to the release of an employee's county of residence if it is contained in a public record." *Id.* at 1109. Although we acknowledge that there may be situations in which an exemption could preclude revealing an employee's county of residence, it must be based upon the conclusion that disclosing the **county of residence** itself, "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. § 67.708(b)(1)(ii) Thus, we **decline** to hold that county of residence is a part of a

---

**16.** OA does not cite to any case law or other authority to support its contention that where a home address disclosure has been properly refused, separate requests for street, post office box, city or ZIP code must be refused based solely thereon.

home address under the RTKL.[17] We rule that where a home address is properly withheld from disclosure, the separate request for the employee's county of residence where the requirements of an exception under Section 708(b) of the RTKL have not been met, the county of residence **must, as a matter of law, be revealed.**[18]

**17.** Notably, the Dissent does not provide any legal basis to conclude otherwise. In fact, the Dissent declines to address or provide any legal authority pertaining to the critical issue before this Court—whether county of residence is a part of home address. The Dissent asserts that the Majority Opinion has fashioned a new "rule" that "OA may only withhold Commonwealth employees' county of residence where it separately demonstrates that disclosure of county of residence, by itself, satisfies the requirements of an exception under Section 708(b) of the [RTKL]" and, thus, the case should be remanded. Dissenting op. at 73. We do **not** today establish **a new rule.** That rule was established in the *en banc Raffle* decision, wherein, this Court addressed both the constitutional right to privacy **and** applicability of the personal security exemption and held:

> [T]here [is] no constitutional right to privacy in a home address **and ... the personal security exemption does not preclude the release of government employees' home addresses on the reasons advanced in the affidavit** [attesting that disclosure of home address information increases the risk of social engineering attacks and identity theft]. . . . **Moreover, that rationale is equally applicable to the release of an employee's county of residence if it is contained in a public record.**

*Raffle*, 65 A.3d at 1109 (emphasis added). Importantly, the concurring opinion also acknowledged no constitutional right to privacy in a home address and that the rationale was equally applicable to an employee's county of residence, wherein it stated:

> In this case, as in [*Office of the Lieutenant Governor v. Mohn*, 67 A.3d 123 (Pa.Cmwlth. 2013) ], the affidavit purporting to prove that the employee's county of residence or middle name is exempt from disclosure was not specific enough to meet the personal security exception set forth in Section 708(b)(1)(ii) of the RTKL.[FN]
>
> [FN] The affidavit submitted by the Office of the Governor treated an individual's county of residence as a component of the home address; therefore, **the affidavit only describes home addresses in general and does not contain any specific averments regarding an individual's county of residence.** Because the majority in *Mohn* held that there is never a constitutional right to privacy in a home address, it found that rationale 'is equally applicable to the release of an employee's county of residence if it is contained in a public record.' [*Raffle*, 65 A.3d at 1109].

*Raffle*, 65 A.3d at 1112 (Cohn Jubelirer, J., concurring) (citation omitted; emphasis added). "[I]t would be jurisprudentially unsound and in violation of the fundamental principle of *stare decisis* for this Court to unsettle an area of law which [was recently settled.]" *Gardner v. Consol. Rail Corp.*, 524 Pa. 445, 573 A.2d 1016, 1018 (1990). The concurrence in *Raffle* also demonstrates that county of residence is separate from home address and acknowledges the requirement that the agency must establish that disclosure of county of residence meets the exemption requirements.

**18.** The Dissent argues that the OOR should have reviewed documents submitted in an entirely separate case, supporting an entirely different disclosure—home address. Presumably, due to the "costly burden imposed on Commonwealth agencies in complying with broad RTKL requests" the Dissent implies, without any supporting authority, that based upon evidence demonstrating harm caused by home address disclosure, the OOR should expend its time and resources to extrapolate that similar harm would occur if county of residence is disclosed. Dissenting op. at 73. This is not the law. Our Court has stated: "[g]eneral, broad-sweeping conclusions will not be a substitute for **actual evidence of the likelihood of a demonstrable risk** to the individuals involved **posed by a particular disclosure.**" *Schaefer*, 45 A.3d at 1158 (emphasis added). "[T]he burden [is] on the agency to prove by a preponderance of the evidence that a particular record is exempt from public access." *Raffle*, 65 A.3d at 1107 n. 1. The OOR is not charged with extrapolating what, if any, evidence from a different case will satisfy the agency's burden. Further, this Court does **not** declare that the OOR **must not**

■ Next, OA contends that disclosure of Commonwealth employees' counties of residence undermines home address redaction. In its Position Statement, OA described the issue as "whether providing county of residence is inordinately likely to lead to the successful discernment of home address where home address is otherwise exempt." R.R. at 3702a. Relying on "statistical science" evidence,[19] OA contends that "county of residence generally narrows, to an unacceptable degree, the search for an individual about who other identifying information is known." OA Br. at 15. We disagree.

This Court has held:

That properly disclosed public records may enable the request[e]r or others, by doing further research, to learn information that is protected from disclosure is not generally a sufficient basis to refuse disclosure.... There may be some cases in which the evidence establishes that disclosure of public records which are not facially exempt will necessarily or so easily lead to disclosure of protected information that **production of one is tantamount to production of the other, or that disclosure of the one is highly likely to cause the very harm the exemption is designed to prevent....**

*Hous. Auth. of the City of Pittsburgh v. Van Osdol,* 40 A.3d 209, 216 (Pa.Cmwlth. 2012) (emphasis added).

■ Moreover, we take judicial notice of the fact that Pennsylvania counties vary in size from approximately 130 square miles to approximately 1,230 square miles, with population in those counties ranging

---

consider evidence from a separate matter. If a request is made for the same information previously provided to OOR in a different matter, the OOR would, upon request, be free to consider it. Notably, here, the request at issue was for county of residence, implicating decidedly different risks than the home address request made in the separate matter.

19. OA cites to a Statistical Policy Working Paper, issued by the Federal Committee on Statistical Methodology, which states in relevant part:

Once an individual or establishment's records are associated with a small geographic area, the possibility of identification is greatly increased. Geographic location is a characteristic that appears on most microdata files. Agencies should give geographic detail special consideration before releasing a microdata file because it is much easier for an intruder to link a respondent to the respondent's record if the intruder knows the respondent's city, for example, rather than if he or she only knows the respondent's state.

Based on these considerations, the Census Bureau does not identify any geographic region with less than 100,000 persons in the sampling frame. A higher cut-off is used for surveys with a presumed higher disclosure risk.

94, Statistical Policy Working Paper 22 (Second version, 2005), Federal Committee on Statistical Methodology, http://www.ehealth information.ca.php54-2.ord1-1.websitetest link.com/wp-content/uploads/2014/08/2005-Working-Paper-221.pdf. That document also states:

It is NCHS [National Center for Health Statistics] policy to make microdata files available to the scientific community so that additional analyses can be made for the country's benefit. Such files are reviewed for approval by the NCHS Disclosure Review Board following guidance and principles contained in the Staff Manual and the NCHS Checklist for the Release of Micro Data Files. These guidelines require that detailed information that could be used to identify individuals (for example, date of birth) should not be included in microdata files. The identities of geographic places and characteristics of areas with less than 100,000 people are never to be identified and it may be necessary to set this minimum at a higher number if research or other considerations so indicate. Information on the drawing of the sample that could identify data subjects should not be included.

from 5,010 to 1,536,471.[20] Given these facts, we do not consider the disclosure of a Commonwealth employee's county of residence "tantamount to production" of the employee's home address, "or that disclosure of the [county] is **highly likely** to cause the very harm the exemption is designed to prevent[.]" *Id.* '(emphasis added). Even if OA could meet the significant burden of demonstrating that the disclosure of the Commonwealth employees' **complete addresses** was **reasonably likely** to result in harm, it does not necessarily follow that disclosure of the employees' **counties** of residence, alone, would carry with it a **high likelihood** of the same harm, given the lack of location specificity.[21] In the absence of such evidence, we conclude that OA has not met its burden.[22]

■ Finally, Requester has asked this Court to award attorneys' fees pursuant to Section 1304 of the RTKL, 65 P.S. § 67.1304, because it contends the OA's appeal is frivolous and its denial of records was based upon an unreasonable interpretation of the RTKL. Section 1304 of the RTKL governs the award of court costs and attorneys' fees. That section provides:

(a) **Reversal of agency determination.**—If a court reverses the final determination of the appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:

(1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of this act; or

(2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

(b) **Sanctions for frivolous requests or appeals.**—The court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to an agency or the requester if the court

---

*Id.* at 45.

**20.** The Pennsylvania Department of ˙Health website provides vital statistics data for the Commonwealth, including 2011 population: http://www.portal.state.pa.us/portal/server.pt?open=514&objID=596032&mode=2

**21.** We also reject OA's request that this matter be remanded for a hearing before the OOR. OA presented its evidence in a request that the OOR incorporate by reference the briefs and affidavits in *Pennsylvanians for Union Reform v. State Employees Retirement System*, OOR Dkt. AP 2013–1830. It was OA's "burden … to prove by a preponderance of the evidence that [county of residence] is exempt from public access." *Raffle*, 65 A.3d at 1107 n. 1. The only employee-specific evidence OA attempted to submit to the OOR supported OA's refusal to disclose home addresses, not counties of residence. Thus, it did not offer "actual evidence of the likelihood of a demonstrable risk to the individuals involved posed by [the] particular disclosure [of employees' counties of residence]." *Schaefer*, 45 A.3d at 1158.

**22.** OA contends that "[Section 614 of] the Administrative Code [of 1929] does not require that county of residence be made public in this circumstance." OA Br. at 22. It asserts that Section 614 of the Administrative Code of 1929 does not establish "the unconditionally public nature" of the information at issue. Accordingly, OA maintains that "[w]here information is not established by a statute as unconditionally public in nature, it is subject to the RTKL's Section 708(b) exemptions[.]" OA Br. at 25. Having found that Section 708(b) of the RTKL does not exempt disclosure of the subject Commonwealth employees' counties of residence and thus, the information must be revealed under the RTKL, we need not address whether Section 614 of the Administrative Code requires disclosure.

finds that the legal challenge under this chapter was frivolous.

**(c) Other sanctions.**—Nothing in this act shall prohibit a court from imposing penalties and costs in accordance with applicable rules of court.

65 P.S. § 67.1304. Although we disagree with OA's legal position in the instant matter, we recognize the legitimacy of OA's general concerns regarding the personal security of the affected individuals and note its reasonable attempt to satisfy the RTKL's disclosure exemptions given the lack of clearly established law as it pertains to requests solely for employees' counties of residence where disclosure of the employees' home addresses were denied. Accordingly, we do not find an award of attorneys' fees to be warranted.

For all of the above reasons, the OOR's Final Determination is affirmed.

### ORDER

AND NOW, this 20th day of November, 2014, the Office of Open Records' February 26, 2014 Final Determination is affirmed.

### DISSENTING OPINION BY Judge COHN JUBELIRER.

I respectfully dissent. Rather than affirm the Office of Open Records' (OOR) Final Determination, I believe this matter should be remanded to the OOR to examine, as requested by the Governor's Office of Administration (OA), the evidence submitted by numerous Commonwealth agencies in a case involving the same Requester, *Pennsylvanians for Union Reform v. State Employees Retirement System* *(PFUR v. SERS)*, OOR Dkt. AP 2013–1830.

The Majority holds, for the first time, that county of residence is not a component of home address and, therefore, OA may only withhold Commonwealth employees' county of residence where it separately demonstrates that disclosure of county of residence, by itself, satisfies the requirements of an exception under Section 708(b) of the Right–to–Know Law (RTKL).[1] Thus, under the rule adopted by the Majority, OA would have to demonstrate that disclosure of county of residence, alone, "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual," 65 P.S. § 67.708(b)(1)(ii), in order to properly withhold county of residence information. However, the OOR's decision to ignore OA's request for the OOR to take notice of the evidence submitted by OA in the similar case of *PFUR v. SERS* denies OA and Commonwealth employees the opportunity to demonstrate that access to county of residence information should be withheld.[2]

The important purpose of the RTKL, promoting transparency in government, does not come without cost and the reality is that there can be a costly burden imposed on Commonwealth agencies in complying with broad RTKL requests. For example, in *PFUR v. SERS*, nearly twenty separate Commonwealth agencies submitted over 3,500 pages of briefs, affidavits, and job descriptions in support of the RTKL personal security exemption. However, there is no reason that these justifiable costs need to be made greater than necessary. In its response to the OOR's invitation to submit information to support

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. § 67.708(b).

2. I also note that the OOR denied requests to participate in this case made by some of the employees affected by this RTKL Request. (Final Determination at 3.)

its position in this matter, instead of attempting to compile new materials for nearly 10,000 employees, OA respectfully requested "that the OOR permit OA to incorporate herein by reference the briefs and affidavits completed by the Commonwealth agencies as directly interested third parties" in *PFUR v. SERS*. (OA's Response at 2, R.R. at 3701a.) As support for this request, OA informed the OOR that "[t]he significant effort which was undertaken to create [the] materials [for *PFUR v. SERS]* in a timely fashion cannot easily be duplicated by the agencies, nor should it have to be where ... the materials are recent and responsive as they stand." (OA's Response at 2, R.R. at 3701a.) Because considerable taxpayer funds were already expended as a result of the time and effort needed to support RTKL exceptions in *PFUR v. SERS*, efficiency should dictate that the OOR at least examine the materials already compiled for that case. The Majority's opinion does not consider the taxpayer savings that would be accomplished through this—particularly where no statute or rule requires this unnecessary duplication of effort.

While the Majority finds that the materials from *PFUR v. SERS* are largely irrelevant, I believe that their relevance has increased following the unappealed determination by the OA Open Records Officer that the home address information for 9,444 employees in this matter is exempt from disclosure pursuant to the personal security exception.[3] Because there has already been a conclusion that a substantial and demonstrable personal security risk exists if OA employees' home address information is released, these materials have acquired additional relevance for proving whether county of residence information

for these Commonwealth employees should also be exempt from disclosure.

The Majority assumes that the evidence submitted for *PFUR v. SERS* would not change the outcome of this case because those materials were submitted to provide justification for withholding *home address* rather than *county of residence* information and, thus, that there is no need to remand this matter to the OOR. In support of this assumption, the Majority points out that "this Court may exercise functions of a fact-finder, and has the discretion to rely upon the record created below or to create its own." *Commonwealth, Governor's Office of Administration v. Pennsylvanians for Union Reform, Inc.*, 105 A.3d 61, 67 n. 12, 2014 WL 6481258 (Pa.Cmwlth.2014) (citation omitted). While the Majority is correct that this Court *may* exercise the functions of a fact-finder, *Department of Labor & Industry v. Heltzel*, 90 A.3d 823, 828 (Pa. Cmwlth.2014), this Court has not actually exercised this function by accepting the materials from *PFUR v. SERS* into the record and then making findings of fact and conclusions of law based upon an examination of this evidence. Therefore, in the absence of this Court engaging in actual fact finding, the Majority's assumption that the evidence from *PFUR v. SERS* would not change the outcome in this case is unsupported. I believe that either this Court or the OOR should make findings based on a review of the materials from *PFUR v. SERS* to determine whether disclosure is reasonably likely to result in a substantial and demonstrable personal security risk to any of the affected Commonwealth employees if their county of residence information is released.

---

3. Following Requester's initial request for the home address and county of residence information for 15,438 employees, OA disclosed the requested personal information of 5,994 employees while withholding the personal information of the other 9,444 employees.

The reason I believe a fact finder should make findings based on the materials from *PFUR v. SERS* [4] is that a cursory review illustrates real and demonstrable security risks that certain Commonwealth employees face each day at work. In one affidavit submitted for *PFUR v. SERS*, the affiant asserts that at a state hospital run by the Department of Public Welfare (DPW), "[a] resident with a history of sexual abuse has told various employees that he will come to their homes and rape their children." (R.R. at 104a.) In another affidavit, submitted by the Bureau of State Licensing of the DPW, the affiant asserts that one "employee was beaten while executing a closure of a home" while a second "employee was held at knife point for several hours while conducting an investigation of a home operating without a license by the two illegal operators." (R.R. at 114a.) Whether these extreme personal security risks might support exempting the release of county of residence information where, as here, a determination has already been made that their home address information is exempt from disclosure, should be determined based on fact not assumption. In a third affidavit, Michael D. Klopotoski, the Eastern Regional Deputy Secretary of the Pennsylvania Department of Corrections, asserts that he is subject to retaliation and harassment and that "retaliation takes the form of threats, harassment, assaults, or physical harm, *or the filing of fraudulent liens or other financially damaging documents* against me." (R.R. at 2394a (emphasis added).) I note that liens are filed at the county level, and Mr. Klopotoski has a rather unique last name. Thus, whether releasing his county of residence could lead to a retalia-

tory lien being filed against him, should likewise be determined.

These are just three examples from the thousands of pages of materials that OA requests the OOR incorporate by reference. My analysis of this issue is not specific to the particular request before us, nor this Requester's motivation for requesting county of residence information, which may be perceived as laudable; instead, because the principle we apply here will apply in future cases, and because a requester does not have to provide a reason for requesting information, our job is to apply the statutory protection the legislature has created to protect Commonwealth employees from harm. Even though an examination of materials from *PFUR v. SERS* may not result in a different determination, I believe that the Majority errs by neither remanding the matter to the OOR to examine the materials nor, in the alternative, accepting the materials into the record for this Court to examine, as fact-finder, so that the statutory standard can be applied.

Moreover, I believe the Majority's attempt to analogize the proceedings of the OOR to those of a court does not take into account the RTKL's unique statutory scheme. Under Section 1102(b) of the RTKL, 65 P.S. § 67.1102(b), the OOR is permitted to adopt procedures for RTKL appeals. Section 1102(b) provides that:

(1) If an appeal is resolved [by the OOR] without a hearing, 1 Pa.Code [§§ 31.1–35.251] (relating to general rules of administrative practice and procedure) do[ ] not apply except to the extent that the agency has adopted these chapters in its regulations or rules....

4. As the Majority points out, the materials from *PFUR v. SERS* were not part of the record before the OOR in this matter; therefore, these materials are not part of the rec-

ord certified to this Court by OOR. OA has included copies of the materials submitted in *PFUR v. SERS* in the reproduced record in this matter.

(2) If a hearing is held, 1 Pa.Code [§§ 31.1–35.251] shall apply unless the agency has adopted regulations, policies or procedures to the contrary under this subsection.

(3) In the absence of a regulation, policy or procedure governing appeals under this chapter, the [OOR] shall rule on procedural matters on the basis of justice, fairness and the expeditious resolution of the dispute.

65 P.S. § 67.1102(b). In interpreting Section 1102(b), this Court held that "a court reviewing an appeal from the OOR ... should consider the manner of proceeding *most consistent with justice, fairness, and expeditious resolution.* For example, should a hearing be necessary for proper review, a court may consider that a hearing before ... OOR ... *is not attended with the same formality as in court."* *Bowling v. Office of Open Records,* 990 A.2d 813, 823 (Pa.Cmwlth.2010) (emphasis added), *aff'd,* 621 Pa. 133, 75 A.3d 453 (2013). Because typical administrative practice and procedure is often inapplicable to the OOR,[5] 65 P.S. § 67.1102(b)(1), and the OOR is not subject to the same formalities as courts, an examination by the OOR of the evidence from *PFUR v. SERS* would be most consistent with a just, fair, and expeditious resolution of this matter. *Bowling,* 990 A.2d at 823.

For the foregoing reasons, I would vacate the OOR's Final Determination and remand this matter for it to take notice of, and consider in this matter, the evidence submitted in *PFUR v. SERS.*

---

5. Even in instances where the General Rules of Administrative Practice and Procedure apply to the OOR, the rules allow that "any portion of the record in any other proceeding before the agency" may be offered into evidence if "shown to be relevant and material to the instant proceeding." 1 Pa.Code § 35.167.