# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Department : 
of Revenue, : 
                Petitioner : 
: No. 2318 C.D. 2014 
         v. : Submitted: June 26, 2015 
: 
Derrick Flemming, : 
                Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ROBERT SIMPSON, Judge
              HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**              **FILED: August 21, 2015**

The Pennsylvania Department of Revenue (Department) petitions for review from a final determination of the Office of Open Records (OOR), granting the request of Derrick Flemming (Requester) under the Right-to-Know Law (RTKL).[1] Requester sought records regarding the Department's administration of the Pennsylvania Lottery (the "Lottery") pursuant to Section 303 of the State Lottery Law, 72 P.S. §3761-303[2] (State Lottery Law). The Department denied access under Section 708(b)(1)(ii) of the RTKL, 65 P.S. §67.708(b)(1)(ii) (the Personal Security exception), and Section 708(b)(11) of the RTKL, §67.708(b)(11) (the Trade Secrets exception). The Department raises a procedural challenge and appeals OOR's determination on the merits. Upon review, we affirm.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[2] Act of August 26, 1971, P.L. 351, as amended.

## I. Background

Requester submitted a RTKL request to the Department for "[(1)] data for all of your retail agents info[rmation] [(Agent Information),] and [(2)] all purchased and winning tickets by each game (Scratch-off and Draw), by day and retailer[,] from January 1, 2012 to current [(Ticket Information)]. I am not looking for any winner names. For winning tickets[,] can you tell where they were purchased?" Reproduced Record (R.R.) at 18a (Request). As to Agent Information, he sought: Agent number; store name; address; city; retailer type; and, Agent start date. As to Ticket Information for purchased and winning tickets, he sought: Agent number; game; date; number of tickets purchased; number of winning tickets; dollar(s) spent; and dollar(s) paid out. Id.

The Department denied the Request in part based on the public safety exception in Section 708(b)(2) of the RTKL, 65 P.S. §67.708(b)(2). Requester appealed the denial of part 2 of the Request (Ticket Information) to OOR.

On appeal to OOR, the Department asserted the requested records were protected by the Personal Security and Trade Secrets exceptions under the RTKL. In support, the Department submitted a position statement verified by Jeffrey Kaylor, Records Legal Liaison for the Department, and a sworn affidavit of James Morgan, Director of Security for the Lottery (Affidavit).

Upon review of the materials the Department submitted, OOR concluded the Department did not establish either exception asserted. See Flemming v. Dep't of Revenue, OOR Dkt., No. AP 2014-1658 (issued Nov. 25,

2014) (Final Determination). OOR did not dismiss the appeal as defective, noting Requester submitted a copy of the Request once ordered to do so. Id. at 2 n.2.

As to the Personal Security exception, OOR reasoned the Affidavit was too speculative to qualify as sufficient evidence. In particular, OOR noted the Department did not explain how releasing records regarding past ticket sales and winnings posed a threat to retailers in the present. Id. at 6.

As to the Trade Secrets exception, OOR likewise found the Affidavit too vague. For instance, although the Department alleged that Lottery competitors would use the information to the detriment of Lottery's economic goals, the Department did not identify any competitors, or indicate how disclosure of the information would harm Lottery's economic, business and policy goals.

The Department then filed a petition for review.

## II. Discussion

On appeal,[3] the Department raises procedural and substantive issues. Procedurally, it asserts Requester's appeal is defective because he did not submit a copy of his original request to OOR. Substantively, it contends the information is protected by the Personal Security exception contained in Section 708(b)(1)(ii) of the RTKL, and as trade secret information protected by the Trade Secrets exception in Section 708(b)(11) of the RTKL.

---

[3] In a RTKL appeal involving a Commonwealth agency, this Court has the discretion to rely upon the record created below or to create its own. Dep't of Labor & Indus. v. Heltzel, 90 A.3d 823 (Pa. Cmwlth. 2014) (en banc).

## A. Procedure

At the outset, the Department challenges Requester's appeal to OOR as procedurally deficient. It argues OOR erred in failing to "summarily dismiss [Requester's] appeal even though [he] failed to comply with the OOR's Order dated October 27, 2014." See Pet. for Review at ¶10(a). The Department's sole complaint is that Requester did not submit the original request with his appeal to OOR as required by OOR's Interim Guidelines.

Although it is unclear whether this issue was raised before the fact-finder, R.R. at 19a-34a, because the Department questions OOR's authority to render a decision, we address it. Upon consideration, we reject the Department's procedural challenge for several reasons.

First, OOR's "Interim Guidelines" are a dubious basis for a dismissal. As our Supreme Court noted, OOR's Interim Guidelines "do not constitute duly promulgated regulations" entitled to deference. Bowling v. Office of Open Records, 75 A.3d 453, 471 n.20 (Pa. 2013); Office of Open Records v. Center Twp., 95 A.3d 354, 369 n.20 (Pa. Cmwlth. 2014).

Second, the guidelines purportedly require an appeal to include a copy of the complete request. The Department does not allege the Request was incomplete. Relevant here, OOR's guidelines do not require submission of an identical copy of a request in the original format. Indeed, were OOR to construe its guidelines so strictly, compliance would not be possible as the *original* copy of a request is submitted to an agency subject to the RTKL.

4

Third, contrary to the Department's characterization, Requester did not "[fail] to comply with the OOR's Order ...." Pet. for Review at ¶10(a). OOR allowed Requester an opportunity to cure the alleged deficiency and deemed his later submission sufficient. In so doing, OOR construed its guidelines to require the original content of the request submitted to an agency, not the original format. On review, the content of the Request is identical to the submission to the Department, and the Department does not dispute its accuracy. Based on that construction, Requester did not violate OOR's guidelines or OOR's procedural directive.

Thus, Requester's alleged failure to include a copy of the Request with his appeal is not fatal. See, e.g., Kokinda v. Cnty. of Lehigh (Pa. Cmwlth., No. 1146 C.D. 2013, filed Jan. 8, 2014), 2014 WL 61317 (unreported) (noting trial court held copy of request was not necessary for review). Accordingly, OOR did not err in accepting Requester's appeal and deciding it on the merits.

**B. Merits**

Next, we assess the Department's arguments that Ticket Information is protected by the Personal Security and the Trade Secrets exceptions of the RTKL.

The RTKL is remedial in nature and "is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." Pa. State Police v. McGill, 83 A.3d 476, 479 (Pa. Cmwlth. 2014) (en banc).

5

Consistent with the RTKL's goal of promoting government transparency, the exceptions to disclosure must be narrowly construed.  Id.

Under the RTKL, records in possession of a Commonwealth agency are presumed to be public unless they are: (1) *exempt under Section 708 of the RTKL*; (2) "protected by a privilege; or[,] (3) … exempt from disclosure under any other Federal or State law or regulation or judicial order or decree."  Section 305 of the RTKL, 65 P.S. §67.305 (emphasis added).  Pursuant to Section 708(a) of the RTKL, an agency bears the burden of proving a RTKL exception by a preponderance of the evidence.  65 P.S. §67.708(a).

## 1. Personal Security Exception

The Personal Security exception protects any record, the disclosure of which "would be reasonably likely to result in substantial and demonstrable risk of physical harm to or the personal security of an individual."  Section 708(b)(1)(ii) of the RTKL, 65 P.S. §67.708(b)(1)(ii).  To meet its burden of proof, an agency must show both:  (1) a "reasonable likelihood" of (2) "substantial and demonstrable risk" to an individual's security if the information is not protected.  Governor's Office of Admin. v. Purcell, 35 A.3d 811 (Pa. Cmwlth. 2011).  We define substantial and demonstrable as actual or real and apparent.  Id.  "More than mere conjecture is needed."  Governor's Office of Admin. v. Pennsylvanians for Union Reform, Inc., 105 A.3d 61, 66 (Pa. Cmwlth. 2014) (quoting Purcell, 35 A.3d at 820).

6

Recently, this Court construed this exception strictly to require some explanation as to "*how* the disclosure … would be reasonably likely to result in a substantial and demonstrable risk of harm to [individuals'] personal security." State Emps.' Ret. Sys. v. Fultz, 107 A.3d 860, 869 (Pa. Cmwlth. 2015) (emphasis added). We rejected "general and broad-sweeping" conclusory statements contained in identical affidavits regarding the perceived threat. Id.

Here, the harm the Department articulates relates to the potential for criminal activity involving retail establishments because the Lottery is a largely cash business. The Department contends that divulging the number of winning tickets purchased at a specific retailer would divulge the amount of cash on hand, which in turn, would encourage robberies of these retailers. Specifically, the Department submits: "If information about the total number of tickets purchased at a specific Pennsylvania Lottery retailer would be disclosed, it is my opinion that criminals would use this information to target specific Pennsylvania Lottery retailers and their employees." Affidavit at ¶20, R.R. at 28a. The Department also posits that "criminals would use this information to target … Lottery winners." Id.

The Affidavit consists of speculation as to possible harms without containing any facts to indicate their likelihood. As such, the threat the Department describes is pure conjecture. Fultz. Given the absence of any facts regarding likelihood, the Court agrees with OOR that the perceived threat of robberies is not a *reasonably* likely result of disclosing the number and amount of winning tickets by retailer. Id.

Further, the Ticket Information would pertain to the history of winning tickets. There is no evidence that such historical information correlates to any present or future winnings.

Significantly, the Ticket Information does not implicate the personal information of any Lottery winners or individual employees. Neither winners nor employees are identified in the Ticket Information. Also, the Department did not assert that disclosure of the Ticket Information puts any individual's personal information at risk. The information the disclosure of which constitutes a threat is the number of winning tickets and the total number of dollars paid to winners. The Department did not set forth any facts that show potential criminals pose a real, as opposed to a perceived, threat. Purcell.

As the Department's evidence does not offer sufficient facts to support a "reasonable likelihood" of harm to personal security, we uphold OOR's determination as to the Personal Security exception.

**2. Trade Secrets Exception**

The Trade Secrets exception protects records that reveal a "trade secret." Section 708(b)(11) of the RTKL, 65 P.S. §67/708(b)(11). Trade secrets are defined in the RTKL as:

> [i]nformation including a formula, drawing, pattern, compilation, including a customer list, program, device, method, technique or process that:
>
> (1) derives economic value, actual or potential, from not being generally known to and not being readily ascertainable by

8

proper means by other persons who can obtain economic value from its disclosure or use; [and]

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Section 102 of the RTKL, 65 P.S. §67.102. This definition is identical to that contained in the Uniform Trade Secrets Act. See 12 Pa. C.S. §5302.

Pennsylvania courts confer "trade secret" status based on the following factors: (1) the extent to which the information is known outside of the business; (2) the extent to which the information is known by employees and others in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the entity's business and to competitors; (5) the amount of effort or money expended in developing the information; and, (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. Dep't of Pub. Welfare v. Eiseman, 85 A.3d 1117 (Pa. Cmwlth. 2014), appeal granted,[4] 106 A.3d 610 (Pa., Nos. 129 EAL 2014, 130 EAL 2014, 131 EAL 2014, filed Oct. 23, 2014) (applying trade secret definition in RTKL context; citing Crum v. Bridgestone/Firestone N. Amer. Tire, 907 A.2d 578 (Pa. Super. 2006) (citing and adopting standard from RESTATEMENT (SECOND) OF TORTS §757)). To constitute a "trade secret," the information must be an "actual secret of peculiar importance to the business and constitute competitive value to the owner." Parsons v. Pa. Higher Educ. Assistance Agency, 910 A.2d 177,

---

[4] Upon granting the petition for allowance, the consolidated appeals were transferred to docket numbers 45 EAP 2014, 46 EAP 2014 and 47 EAP 2014 respectively. The Supreme Court heard argument on these consolidated appeals on May 5, 2015.

9

185 (Pa. Cmwlth. 2006). The most critical criteria are "substantial secrecy and competitive value." Crum, 907 A.2d at 585 (citations omitted).

The Department asserts the disclosure would reveal the minimum amount of cash-on-hand that Lottery retailers have. R.R. at 27a (Affidavit at ¶¶5-7). Ticket Information, if disclosed, would also reveal "how many people leave a specific [Lottery] retailer with a winning" ticket. Id. (Affidavit at ¶8).

As to the Trade Secrets exception, the Affidavit contains scant information. After repeating that the Ticket Information sought is not publicly available, whether by the Lottery or its retailers, the Department's affiant attests: "If the [Ticket Information] w[as] to be made publicly available, it is my opinion that [Lottery] competitors would utilize the same to further their economic goals to the detriment of the [Lottery's] economic, business and policy goals." R.R. at 29a (Affidavit at ¶28). However, the Department does not identify any competitors, or explain how the information is of any competitive value.

In context, it appears the Department interprets the term "competitors" broadly to include any retailer or vendor that may compete for a customer's dollars for a Lottery ticket. For example, the Department states "Lottery competes with every product in a retail establishment for a customer's discretionary spend[,]" defining competition in terms of products and consumer choices. R.R. at 24a (verified letter). The Department illustrates its concern about disclosure as follows:

> … for instance, someone entering the store with a $5 bill must choose whether to spend all $5 on Lottery tickets or whether to spend $4 on Lottery tickets and $1 on a

10

Snickers bar. Should the requested information be publicly released, Lottery competitors would be able to determine which stores are doing large volumes of all-cash, discretionary spend sales. This information, in turn, would enable Lottery competitors to lure consumers away from utilizing their discretionary income for Lottery products and instead attempt to influence them to purchase other products. If in the earlier hypothetical, Mars, Inc., knew that a certain store does a large volume of Lottery sales, they may decide to put up a $2 three-for-two deal on Snickers to lure Lottery customers away from Lottery tickets and to their product.

Pet'r's Br. at 22-23.

Notably, the Department does not protect the secrecy of the requested information in all circumstances. It concedes that it makes the requested information available to vendors of the Lottery "for purposes of furthering Lottery business." See R.R. at 23a (footnote to verified statement). Thus, the information is known outside of the Department when it suits the Lottery's purposes.

The Department also acknowledges "the Requested Records are not developed per se …." R.R. at 24a. There is no evidence the Department undertakes any efforts or expends any resources to develop the Ticket Information.

Considering the factors employed in determining trade secret status, Ticket Information does not qualify. The Lottery markets a product, lottery tickets, which are sold in retail stores. The Department defines competitors as both retail stores and sellers of products that compete for a consumer's dollar, e.g., Mars, Inc. We reject as absurd the breadth of the Department's claim of competition.

It is conceivable that the Lottery attracts the same consumers who participate in small games of chance, or who play bingo, quarter slot machines and similar modest gaming. Under such an approach, potential competitors are far more limited than every distributor of every snack, refreshment, or other consumable product. However, the Department did not identify "gaming" competitors, nor does it explain how such competitors could use the Ticket Information to the Lottery's competitive disadvantage. Indeed, the Department does not explain how "consumable" competitors could use the Ticket Information to the Lottery's disadvantage. Lacking a cohesive explanation, we see no obvious way the Lottery would be put at a disadvantage by release of the Ticket Information. A connection between the alleged harm and the information at issue is essential to proving an exemption under the RTKL. See, e.g., Carey v. Dep't of Corr., 61 A.3d 367 (Pa. Cmwlth. 2013) (explaining necessity of remand to tie asserted exemptions to requested information).

As to the extent to which the information is known by employees and others, the Department acknowledged it shares the information with vendors, and the information is known to its many retailers. That the information is not generally known to its employees does not indicate trade secret status. The Department did not outline any steps it takes as far as confidentiality or non-disclosure agreements with vendors, retailers or employees, to show it maintains the secrecy of the information.

Overall, this information is not readily comparable to trade secrets in which businesses have dedicated resources and time to develop. Part of that harm

is predicated on the concern that a competitor may replicate or modify the information for its own gains. Here, the Department admittedly did not expend funds to "develop" the Ticket Information.

In sum, the Department's evidence is not sufficient to prove trade secret status. Accordingly, we uphold OOR's determination that the Trade Secrets exception does not protect the Ticket Information.

## C. Remand

Lastly, we address the Department's recently raised claim that a remand is necessary to afford due process to the Lottery retailers and winners placed at risk by the disclosure of the Ticket Information. The Department contends our decision in Pennsylvania State Education Association v. Department of Community & Economic Development, 110 A.3d 1076 (Pa. Cmwlth. 2015) (en banc) (PSEA), requires agencies to provide notice to individuals "who may be harmed by such release" to allow them to "show why the requested information is exempt from disclosure." Pet'r's Br. at 18. Because the circumstances presented here do not jeopardize due process rights, we decline the invitation to remand.

In this case, no individual's "personal information" is subject to release as part of the Ticket Information. Consequently, the alleged due process concerns do not justify remand for additional fact-finding and participation by unidentified individuals to assert individualized personal security interests.

13

### III. Conclusion

For all the foregoing reasons, OOR's Final Determination is affirmed.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Department      :
of Revenue,      :
           Petitioner      :
     :    No. 2318 C.D. 2014
        v.      :
     :
Derrick Flemming,      :
          Respondent      :

# **O R D E R**

**AND NOW**, this 21st day of August, 2015, the final determination of the Office of Open Records is **AFFIRMED**.

 

                    _____

                    ROBERT SIMPSON, Judge