**[J-65A-2021, J-65B-2021] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| ENERGY TRANSFER, | : | No. 24 MAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 982 CD |
| | : | 2019 dated October 21, 2020 |
| v. | : | Reversing the Order of the Office of |
| | : | Open Records at No. AP 2019-0502 |
| | : | dated June 26, 2019. |
| ERIC FRIEDMAN, | : | |
| | : | ARGUED: October 26, 2021 |
| Appellant | : | |
| | | |
| PENNSYLVANIA PUBLIC UTILITY | : | No. 25 MAP 2021 |
| COMMISSION, | : | |
| | : | Appeal from the Order of the |
| Appellee | : | Commonwealth Court at No. 980 CD |
| | : | 2019 dated October 21, 2020 |
| | : | Reversing the Order of the Office of |
| v. | : | Open Records at No. AP 2019-0502 |
| | : | dated June 26, 2019. |
| | : | |
| ERIC FRIEDMAN, | : | ARGUED: October 26, 2021 |
| | : | |
| Appellant | : | |

**DISSENTING OPINION**

**JUSTICE WECHT**                                **DECIDED: December 22, 2021**

In February of 2019, Eric Friedman submitted a request under the Right-to-Know Law ("RTKL"), 65 P.S. §§ 67.101-67.3104, for certain records in the possession of the Public Utility Commission ("PUC"). PUC defended against this public records request by asserting that the records were not subject to public disclosure under the Public Utility Confidential Security Information Disclosure Protection Act ("CSI Act"), 35 P.S.

§§ 2141.1-2141.6. Energy Transfer, the public utility that delivered the records into PUC's possession, had not followed the procedures of the CSI Act to designate the responsive records as confidential and not subject to disclosure. The Office of Open Records ("OOR") held that, because Energy Transfer failed to designate the material as containing confidential security information as required by the CSI Act and PUC's regulations, PUC could not invoke the protections of the CSI Act in response to the RTKL request.

The Commonwealth Court reversed, holding that ORR had no authority to determine whether records sought through a RTKL request were not public under the CSI Act. The Majority affirms, holding that the public utility had designated the records as confidential under the CSI Act, and that OOR has no jurisdiction to review this designation. I cannot agree. Under the circumstances of this case, Energy Transfer did not designate the requested records as confidential under the CSI Act. Nor does PUC's reliance upon the CSI Act deprive the OOR of jurisdiction to assess whether the CSI Act establishes the nonpublic nature of responsive records under the RTKL. Accordingly, I dissent.

This case presents a purported conflict between two statutes, one of which generally presumes that records held by an agency are public records, and the other of which protects the disclosure of certain confidential security information. The RTKL presumes that a record in the possession of a Commonwealth agency is public. *See* 65 P.S. § 67.305(a). Notwithstanding this presumption, Section 306 provides that nothing in the RTKL "shall supersede or modify the public or nonpublic nature of a record or document established in Federal or State law, regulation or judicial order or decree." *Id.* § 67.306.

The more specific legislation is the CSI Act, which is a comprehensive statutory scheme pertaining to the handling of material containing confidential security information

("CSI"). The CSI Act provides a substantive definition of CSI, details specific measures by which documents are designated as CSI, provides an appeals process for members of the public to challenge CSI designations, and imposes obligations upon an agency receiving CSI. Section 2 defines "Confidential Security Information" as follows:

> information contained within a record maintained by an agency in any form, the disclosure of which would compromise security against sabotage or criminal or terrorist acts and the nondisclosure of which is necessary for the protection of life, safety, public property or public utility facilities[.]

35 P.S. § 2141.2.

It is the public utility that is charged in the first instance with "determining whether a record or portion thereof contains [CSI]." *Id.*§ 2141.3(a). If the public utility believes that it does, the public utility "must clearly state in its transmittal letter, upon submission to an agency, that the record contains [CSI] and explain why the information should be treated as such." *Id.* § 2141.3(a). The CSI Act requires an agency regularly receiving CSI to develop filing protocols and procedures for public utilities to follow when submitting CSI. *Id.* § 2141.3(b). The requisite protocols are required to instruct public utilities to separate the information they submit to the agency into at least two categories:

> (1) Public.—Records or portions thereof subject to the provisions of [the RTKL].

> (2) Confidential.—Records or portions thereof requested to be treated as containing [CSI] and not subject to the Right-to-Know-Law.

*Id.* § 2141.3(b). The plain terms of Section 2141.3(b) require the public utility to separate information that it submits to an agency into two categories: information that the public utility believes to be public under the RTKL, and information that the public utility believes to contain CSI.

Section 3(c) of the CSI Act provides a method for members of the public to challenge a public utility's CSI designation: "Challenges to a public utility's designation or

request to examine records containing [CSI] by a member of the public shall be made in writing to the agency in which the record or portions thereof were originally submitted." *Id.* § 2141.3(c). The agency is charged with developing procedures to address these challenges. *See Id.* § 2141.3(c)(1)-(6).

Among the mandatory procedures is the requirement that the agency give notice to the public utility upon receiving either a request to examine CSI records or a challenge to the designation of the information as CSI, *id.* § 2141.3(c)(1), as well as the requirement that the agency have an opportunity to review the public utility's designation in the face of such a challenge. *Id.* § 2141.3(c)(2). In conducting its review of the public utility's designation or the request to examine the record, the agency is required to apply the statutory definition of CSI and determine whether the information is, as the public utility declared, CSI, or whether "there are reasonable grounds to believe disclosure may result in a safety risk, including the risk of harm to any person, or mass destruction." *Id.* § 2141.3(c)(4). The agency will provide written notice of its decision to the public utility and the person who requested the records or challenged the designation within sixty days. *Id.* § 2141.3(c)(5). After written notice of the agency's decision, the public utility or the member of the public has thirty days to appeal to the Commonwealth Court, where the court will engage in *in camera* review of the contested records to see if they are protected from disclosure under the CSI Act. *Id.* § 2141.3(c)(6). During the agency's review or an appeal, the agency is required to honor the public utility's designation of the information as CSI. *Id.* § 2141.3(c)(3).

The agency is required to develop protocols regarding its own handling of CSI, including protocols that ensure that "each copy of a record or portion thereof containing [CSI] is clearly marked as confidential and not subject to the provisions of the [RTKL]." *Id.* § 2141.3(d)(1). The agency is further required to keep CSI "on site in secure locations,

separate from the general records relating to the public utility, where it is available for inspection by authorized individuals," *id.* § 2141.3(d)(2); designate certain individuals to have access to or copies of CSI, *id.* § 2141.3(d)(3); train such authorized individuals on handling CSI, *id.* § 2141.3(d)(4); have such individuals sign an agreement acknowledging how to handle CSI, *id.*; and establish a document tracking system to trace all documents containing CSI, *id.* 2141.3(d)(5). To protect the disclosure of CSI, Section 3(e) directs that, "[i]f an agency determines that a record or portions thereof contain [CSI] and information that is public, the agency shall redact the portions of the record containing CSI before disclosure." *Id.*, § 2141.3(e).

The CSI Act plainly exempts CSI from public disclosure under the RTKL: "Public utility records or portions thereof which contain [CSI], in accordance with the provisions of this act, shall not be subject to the provisions of [the RTKL]." *Id.* § 2141.4. The CSI Act bars agencies from disclosing CSI, *id.* § 2141.5, and imposes criminal penalties upon any public official or employee "who knowingly or recklessly releases, publishes or otherwise discloses" such information. *Id.* § 2141.6.

As directed by the CSI Act, PUC has enacted regulations imposing requirements upon public utilities that submit CSI to PUC. In particular, the public utility is required to "(1) Clearly state in its transmittal letter to the Commission that the record contains confidential security information and explain why the information should be treated as confidential." 52 Pa. Code § 102.3(b)(1). The public utility's transmittal letter will itself "be treated as a public record and may not contain any confidential security information." *Id.* In addition, and corresponding to Section 3(b) of the CSI Act, the public utility is required to separate the information it is filing into "[r]ecords that are public in nature and subject to the Right-to-Know Law," and "[r]ecords that are to be treated as containing [CSI] and not subject to the Right-to-Know Law." 52 Pa. Code § 102.3(b)(2).

The public utility is required to "stamp or label each page of the record containing confidential security information with the words 'Confidential Security Information' and place all pages labeled as containing confidential security information in a separate envelope marked 'Confidential Security Information.'" *Id.* § 102.3(b)(3). Finally, the public utility is responsible for redacting any portion of the record containing CSI "for purposes of including the redacted version of the record in the public file." *Id.* § 102.3(b)(4).

Like the CSI Act, PUC's regulations place the responsibility for designating CSI records squarely upon the public utility. *See id.* § 102.3(c) ("The public utility has the responsibility to identify records as containing confidential security information.") To make it abundantly clear what the consequences are for the public utility's failure to follow these regulations, Section 102.3(c) provides that "[w]hen the public utility fails to designate a record as containing confidential security information, it does not obtain the protections offered in this chapter and in" the CSI Act. *Id.* More specifically, "[a]ny record that is not identified, stamped and separated as set forth in subsection (b), may be made available to the public under the Right-to-Know Law." *Id.*

When PUC receives a document designated as containing CSI, the material is to be handled in a manner consistent with the CSI Act: the public utility's unopened envelope is given to an authorized employee of PUC, who will make a preliminary determination of "whether the information has been properly designated in accordance with the definition of confidential security information under [the CSI Act]." *Id.* § 102.3(d). Any records in PUC's possession at the time the CSI Act was enacted in 2007 would have to be re-designated by the public utility as containing CSI in accord with both the regulations and the CSI Act in order to receive the protections afforded to CSI. *Id.* § 102.3(e)-(f). The use of e-mail or other electronic mail system to transmit CSI to the PUC is prohibited. *Id.* § 102.3(g).

The statutory and regulatory requirements described above apply to the instant dispute concerning records connected to the Mariner East I Pipeline. The Mariner East 1 Pipeline is a highly volatile liquid ("HVL") pipeline operated by Energy Transfer. PUC—the entity charged with regulating Energy Transfer and the pipeline—has investigated Energy Transfer several times as a result of pipeline leaks. In the course of these investigations, Energy Transfer submitted to PUC three Hazard Assessment Reports. In response, PUC created three Inspection Reports corresponding to and referencing information contained within the Hazard Assessment Reports. The Hazard Assessment Reports from Energy Transfer and the Inspection Reports from PUC each allegedly estimate the blast radius of leaks or accidents along the pipeline.

Eric Friedman lives near the Mariner East 1 Pipeline. At a public meeting about the pipeline, PUC representatives answered questions from concerned residents regarding the pipeline and the most recent complaint filed by PUC. Friedman asked specifically about the blast radius of the pipeline. PUC Pipeline-Safety Manager Paul Metro reported that PUC was in possession of Hazard Assessment Reports that contained estimates of the blast radius. In an effort to obtain the specific range of the blast, Friedman filed a RTKL request with PUC, seeking records relating to its calculation or estimation of the blast radius of thermal or overpressure events on HVL pipelines. Friedman stated that his request did not seek information that had been designated as CSI.

PUC accepted and treated Friedman's request as a request under the RTKL, not as a challenge under the CSI Act. However, the open records officer denied the request in its entirety, for two reasons: (1) the documents Friedman sought had been designated by the utility company as CSI and they were therefore prohibited from disclosure; and (2) the documents were exempt from disclosure under exceptions contained within the RTKL.

Friedman appealed to OOR. PUC identified six documents as responsive to the request: Hazard Assessment Reports from December 17, 2013; March 27, 2017; and October 5, 2018; as well as PUC's corresponding Inspection Reports. PUC stated that the three Hazard Assessment Reports were created by Energy Transfer, submitted to PUC, and "marked as confidential." PUC's Response to OOR Appeal, 4/15/2019, at 2, 5. PUC also provided OOR with an affidavit from its Safety Manager, Paul Metro, who attested that Energy Transfer had submitted Hazard Assessment Reports "marked as confidential." Affidavit of Paul Metro, 4/15/2019, at 1. PUC also argued that the requested records are exempt from disclosure under the RTKL.

To ascertain whether PUC was correct in its assertion that the responsive records were designated as containing CSI, the OOR directed PUC to submit copies of the transmittal letters that were statutorily and regulatorily required to accompany the transmission of CSI to PUC. *See* 35 P.S. § 2141.3(a); 52 Pa. Code § 102.3(b)(1). Under 52 Pa. Code § 102.3(b)(1), this transmittal letter is a public record, and there was no impediment to sharing this public record with OOR. Nevertheless, PUC declined to comply, explaining that it did not have any public record transmittal letters as its regulations required. Instead, it had non-public transmittal letters that, contrary to the CSI Act and PUC's regulations, purported to contain CSI. PUC indicated that it had redacted the CSI from the transmittal letters in its possession and offered to deliver them to OOR. OOR directed PUC to provide a copy of the redacted transmittal letters to Friedman. PUC refused. Consequently, OOR declined to enter the redacted transmittal letters into the record.

OOR held that PUC failed to establish that the requested records were protected from disclosure by the CSI Act because Energy Transfer had not designated the records as containing CSI in accord with the CSI Act and PUC regulations. Accordingly, OOR

held that the requested documents were not entitled to the protections of the CSI Act. Instead, it applied the RTKL and held that the three Hazard Assessment Reports were not subject to public access because they related to infrastructure security and were exempt from disclosure. 65 P.S. § 67.708(b)(3). As for the Inspection Reports, OOR applied Section 335(d) of the Public Utility Code to hold that the reports had to be disclosed subject to the redaction of any information that could be used for criminal or terroristic purposes. *See* 66 Pa.C.S. § 335(d) (providing that "information which, if disclosed to the public, could be used for criminal or terroristic purposes . . . may be expurgated from the copy of the document made part of the public record").

PUC appealed and the Commonwealth Court reversed, holding that OOR did not have the authority to determine whether records sought through a RTKL request were CSI under the CSI Act. Rather, a requesting individual is required to challenge an agency's determination that certain records are CSI through the administrative procedure of the CSI Act.

The Majority today affirms the Commonwealth Court's decision, holding that OOR has no statutory authority under the CSI Act to identify and release records that the public utility has designated as CSI. Highlighting Energy Transfer's purported designation, the Majority reasons that there is a conflict between two overlapping, unambiguous statutes, and that reconciling the two statutes weighs in favor of affording PUC exclusive jurisdiction with regard to administering the CSI Act. According to the Majority, Energy Transfer's failure to comply with the CSI Act's procedures for designating CSI is immaterial, as the Majority finds no indication that the General Assembly intended for CSI to be disclosed under the RTKL due to a public utility's procedural failures. Maj. Op. at 18. I cannot agree.

As detailed above, the CSI Act is a comprehensive statute providing a means for public utilities and the agency that regulates them to protect CSI from public disclosure, and providing an administrative appeals process to challenge the utility's designation.  To invoke the protections of the Act, there are statutory and regulatory requirements, none of which were followed in this case.

From the evidence below, PUC failed to establish that Energy Transfer submitted a transmittal letter to PUC explaining that the records contain CSI or explaining why the information should be treated as such.  Both the CSI Act and PUC's regulation make it abundantly clear that  Energy Transfer was required to do so.  *See* 35 P.S. § 2141.3(a); 52 Pa. Code § 102.3(b)(1).  Energy Transfer was on notice of this obligation, and was aware that its transmittal letter would be considered a public record and could not contain CSI.  *See* 52 Pa. Code § 102.3(b)(1).  Energy Transfer did not separate the public records that it submitted to PUC from the records containing CSI.  *See* 35 P.S. § 2141.3(b).  Nor did Energy Transfer stamp each page of its Hazard Assessment Reports with the words "confidential security information."  *See* 52 Pa. Code § 102.3(b)(4).  Energy Transfer further failed to create a redacted version of its submission for the public record.  *See id.* The consequences of these failures are identified unambiguously in the regulations: Energy Transfer "does not obtain the protections offered by" PUC's regulations or the CSI Act.  52 Pa. Code § 102.3(c).  Records that not guarded by such protections "may be made available to the public under the Right-to-Know Law."  *Id.*

It was Energy Transfer's obligation to follow these procedures to prevent disclosure.  There is no basis to apply the protections of the CSI Act when the public utility failed to follow the statutory and regulatory procedure to designate material as CSI and to separate the CSI from the public portions of the records as required.  The CSI Act and PUC's regulations are not mere suggestions; they are law.  Instead of establishing

compliance with the statute or the regulation, PUC attempted to substantiate its assertion that the requested records contained CSI before OOR by simply declaring it to be so and citing to Metro's affidavit, in which Metro asserted that the public utility produced the Hazard Assessment reports to PUC and that they were "marked as confidential." As the CSI Act and the regulations make clear, it is not sufficient to invoke the protections of the CSI Act by labeling something "confidential." Just as it would be insufficient to obtain top secret status for classified information by simply writing "confidential" on the document, one cannot obtain the protections of the CSI Act by simply "marking" the material as "confidential." *See* 42 Pa. Code § 102.6(b)(3), (c).

Energy Transfer and PUC are attempting retroactively to fit the requested records into the CSI Act to avoid disclosure in the face of a public records request by simply asserting that, although not designated as such, the records in fact meet the statutory definition of CSI. The Majority validates this disregard of the statutory and regulatory requirements. Our law is not a buffet table; neither individuals nor government agencies can select at whim which laws apply and which do not. If a law, be it statute or regulation, conditions the receipt of a benefit upon the adherence to certain procedures, the rule of law demands that no entity receive that benefit absent compliance with those procedures. The Majority errs in holding otherwise.

I would also take this opportunity to respond to the argument PUC has advanced in this Court that it is immaterial that Energy Transfer failed to follow PUC's regulations in designating the Hazard Assessment Reports in the manner prescribed by PUC's own regulations because PUC is entitled to waive its regulations. The Public Utility Code affords PUC the authority "to rescind or modify" its own regulations. 66 Pa.C.S. 501(a). PUC's regulations also authorize it to grant waivers as follows:

> A petition to the Commission for the issuance, amendment, waiver or repeal of a regulation must set forth clearly and concisely the interest of the

petitioner in the subject matter, the specific regulation, amendment, waiver or repeal requested, and cite by appropriate reference the statutory provision or other authority involved. The petition must set forth the purpose of, and the facts claimed to constitute the grounds requiring the regulation, amendment, waiver or repeal. Petitions for the issuance or amendment of a regulation shall incorporate the proposed regulation or amendment.

52 Pa. Code § 5.43(a). In addition, the petitioner has to serve copies of the waiver petition on all affected and on the "Office of Trial Staff, the Office of Consumer Advocate and the Office of Small Business Advocate," and provide a certificate of service. *Id.*

There is no suggestion that PUC waived any regulatory requirements pertaining to Energy Transfer's submission of material to PUC. Further, the CSI Act, which the PUC is attempting to invoke to protect the release of this information, required PUC to develop protocols to implement it. PUC developed these protocols in its regulations. As a litigation strategy, it now wants this Court to ignore the public utility's non-compliance with PUC's regulations, which PUC developed to implement the very statute that it is now invoking to preclude disclosure. It would appear that PUC seeks the benefits of this statute without the burden of compliance. There is no basis to hold that PUC waived the regulations the CSI Act required it to implement because it did not establish that it followed the protocols implemented to grant a waiver. Indeed, the argument that we should overlook Energy Transfer's failure to abide by PUC's regulations because PUC could have, but did not, waive these regulations, is just as specious as the argument that the requested material falls within the protections of the CSI Act because Energy Transfer could have, but did not, designate the material as containing confidential security information under the CSI Act.

Further, I cannot agree with the Majority's apparent belief that simply uttering "CSI Act" before OOR deprives OOR of jurisdiction or authority to ascertain the role of the CSI Act under the RTKL and the particular records request at issue. The RTKL plainly provides that it does not supersede another statute that establishes the nonpublic nature

of a record (65 P.S. § 67.306), declares that a record in the possession of the Commonwealth is presumed to be public unless it is exempt from disclosure by any other law (65 P.S. § 67.305), and defines a record as public if it is not exempt from disclosure under another law (65 P.S. § 67.102). Here, PUC relied upon the CSI Act as a state law establishing the nonpublic nature of the requested records under Section 306 of the RTKL. OOR, as the tribunal receiving appeals from the denial of right-to-know requests, is tasked with assessing the validity of agency assertions that Section 306 is implicated and that the other law establishes the nonpublic nature of the requested records. When an agency defends against a RTKL request by asserting that another law establishes the nonpublic nature of the record, it is within OOR's authority to assess this assertion.

Otherwise, OOR would have to halt proceedings immediately based upon nothing more than an agency's bald assertion that another law established the record as nonpublic, or based upon an agency hastily writing "confidential" across a responsive record after the RTKL request was made and the parties were before OOR, or based upon an agency's assertion that it believed that the requested information met the definition of CSI without regard to whether it had ever been designated as such. Perhaps the PUC has only to utter "CSI Act" to OOR to defeat the RTKL request. By depriving OOR of jurisdiction based upon nothing more than PUC's assertion that the record "was confidential" under the CSI Act, the Majority is compelling OOR appeal's officers to throw up their hands and swiftly conclude the proceedings based upon post-hoc, unilateral designations by the agency. Under the Majority's approach, by simply incanting "CSI" the public agency deprives the OOR of jurisdiction to assess, under Section 306 of the RTKL, whether the CSI Act does indeed establish the nonpublic nature of the requested records. In addition to being contrary to the procedural requirements of the CSI Act and PUC's regulations, this is not what the RTKL requires.

OOR here applied the analysis required by the RTKL. Because the RTKL gives way to other laws establishing the public or nonpublic nature of a record, 65 P.S. § 67.306, and PUC relied upon the CSI Act as a state law establishing the nonpublic nature of the requested records, OOR, as the tribunal receiving appeals from the denial of right-to-know requests, has the authority to assess the validity of this assertion under Section 306. This is not to say that OOR can examine records that are prohibited from disclosure under the CSI Act. Rather, OOR assesses the validity of an agency's assertion that a record is not public under the CSI Act by examining whether the information has been designated as such under the Act and PUC's accompanying regulations. The CSI Act and PUC's regulations create a way for the OOR to test an agency's assertion that certain records contain CSI and are entitled to the protections of the CSI Act.

"The RTKL contemplates that the foundational question of whether a record or document is exempt from disclosure is a factual one." *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 476 (Pa. 2013). OOR has the authority to assess the public or nonpublic nature of records under any other law. 65 P.S. 67.306; *Dep't of Labor & Indus. v. Heltzel*, 90 A.3d 823 (Pa. Cmwlth. 2014). In *Heltzel*, the Commonwealth Court recognized that "[t]he RTKL contemplates OOR's interpretation of statutes other than the RTKL when evaluating the public nature of records. Otherwise, it would not define 'public record' in a way that implicates other laws." *Id.* at 828. Because "OOR is the body created to adjudicate disputes concerning denials of agency records requested under the RTKL," the RTKL "vests OOR with jurisdiction over challenges to the public nature of records in possession of a Commonwealth agency." *Id.* at 828-29 (cleaned up). Accordingly, I cannot agree with the Majority that PUC's assertion that the records were confidential

under the CSI Act, without more, deprived OOR of jurisdiction to examine the public nature of the records in dispute.[1]

Energy Transfer did not designate its Hazard Assessment Reports as containing CSI as required by the CSI Act or the regulations PUC implemented under the CSI Act's statutory directive. Because Energy Transfer failed to invoke the protections of the CSI Act, the CSI Act does not establish the Hazard Assessment Reports or the Inspection Reports as nonpublic. *See* 35 P.S. § 2141.3(a); 52 Pa. Code § 102.3(c); 65 P.S.67- 306. Accordingly, I dissent.

Justice Todd joins this dissenting opinion.

---

[1]     The consequence of concluding that the CSI Act does not apply is not immediate public disclosure of the contested records. The Commonwealth agency would be free to rely upon the exemptions contained within the RTKL or the application of any other law. Here, PUC relied in the alternative on the exemptions of the RTKL. OOR accepted PUC's argument in part, holding that the Hazard Assessment Reports were not subject to public access pursuant to Section 708(b)(3) (pertaining to infrastructure security), and that the Inspection Reports were subject to disclosure after redaction of any information that could be used for criminal or terroristic purposes in accord with the Public Utility Code, 66 Pa.C.S. § 335(d).